**UNITED STATES of America, Plaintiff,**

v.

**Deborah STANELLE, Defendant.**

**No. 00CR007.**

United States District Court, E.D. Wisconsin.

Jan. 24, 2002.

Steven M. Biskupic, U.S. Dept. of Justice, Office of U.S. Atty., Milwaukee, WI, for U.S.

Dennis P. Coffey, Milwaukee, WI, for Deborah Stanelle.

## DECISION AND ORDER

ADELMAN, District Judge.

Defendant Deborah Stanelle pleaded guilty to one count of bank fraud conspiracy for her role in a property-flipping scheme that involved some sixty-three properties, thirty-seven of which were charged in the indictment. I here address the government's motion for a restitution order.

## I. BACKGROUND

Stanelle purchased inner-city Milwaukee properties at foreclosure, tax, and other distressed property sales, and then swiftly resold them at much higher prices. The purchase moneys were financed by mortgages on the properties, and the artificially high sales prices were based upon misrepresentations about such matters as the value of the properties, the amount of down payments, and whether Stanelle held second mortgages. In addition, for some properties, Stanelle and her colleagues recorded sham intermediate sales to one another at high prices, although the represented amount of money did not change hands. Finally, the mortgage brokers who arranged the mortgages accepted bribes for such favors in approving mortgages as overlooking ultimate buyers' poor credit records.

The conspiracy's profits were thus funded by fraudulently obtained mortgages. Several mortgages have already been defaulted upon, leading to foreclosures and distressed property sales. It is therefore probable that mortgage originators and/or holders lost money due to the conspiracy.

I sentenced Stanelle February 9, 2001 and, as authorized by 18 U.S.C. § 3664(d)(5), granted victims 90 days in which to establish the amount of their losses so that I could enter an appropriate restitution order.

## II. STANDARD OF DECISION

I first assess whether this case is covered by the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A, or the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. § 3663. The MVRA extends to all Title 18 offenses against property, including offenses committed by fraud or deceit, that cause pecuniary loss to an identifiable victim or victims. § 3663A(c)(1). The court in *United States v. Cummings,* No. 01–CR–153 (DLC), 2002 WL 27752, at *5, 2002 U.S.Dist. LEXIS 249, at *17–*18 (S.D.N.Y. Jan.10, 2002), recently found that "the term 'offense against property' used in § 3663A(c)(1) to describe the Title 18 offenses for which restitution is mandatory should also mean an offense against 'tangible property.'" The court therefore concluded that a conspiracy under 18 U.S.C. § 371 to commit theft of money through fraud, including loan fraud, was covered

under the MVRA rather than the VWPA. *Id.*, 2002 WL 27752, at *5–*6, 2002 U.S.Dist. LEXIS 249, at *19. I follow *Cummings* and find that the present case is governed by the MVRA because it involves a conspiracy under § 371 to commit bank fraud.

 The MVRA directs that restitution is to be ordered to any victims who are "directly and proximately harmed" as a result of the offense of conviction. 18 U.S.C. § 3663A(a)(2). The court must determine the full amount of each victim's losses and order restitution to each victim in that amount. § 3664(f)(1)(A). The government must establish each victim's amount of loss by a preponderance of the evidence, § 3664(e), and must prove that the defendant (or a co-conspirator) caused the loss, *United States v. Martin*, 195 F.3d 961, 968 (7th Cir.1999), *cert. denied*, 530 U.S. 1263, 120 S.Ct. 2721, 147 L.Ed.2d 986 (2000). The government must provide evidence "regarding the victims' actual losses which directly resulted from the offenses of conviction." *United States v. Menza*, 137 F.3d 533, 538 (7th Cir.1998). If a victim's loss did not result solely from the offense of conviction, restitution is to be ordered in "the amount (if any) of the loss that is reasonably attributable to the illegal scheme." *Martin*, 195 F.3d at 969.

 The MVRA defines "loss" as the greater of the value of the property on the date of loss, or on the date of sentencing, less the value of any part of the property that is returned. 18 U.S.C. § 3663A(b)(1)(B). Where the property is a fraudulently-obtained loan backed by collateral, each victim's MVRA loss is the amount the victim realized, less the basis, subject to appropriate adjustments for that victim. Each victim's amount realized is the amount it received from selling or reselling the loan or disposing of the collateral; if it still owns the loan and has not disposed of the collateral when restitution

is ordered, the fair market value of the loan may be used instead if it can be ascertained or estimated with sufficient accuracy. The loan originator's basis is the amount it lent; each successive holder's basis is its cost to purchase the loan. Adjustments for each victim require subtracting any repayments of principal to that victim and, under *United States v. Shepard*, 269 F.3d 884, 886 (7th Cir.2001), adding appropriate prejudgment interest.

 Restitution loss amounts may be established through inadmissible evidence, including hearsay, so long as the evidence has "sufficient indicia of reliability to support its probable accuracy." *United States v. Newman*, 144 F.3d 531, 542 (7th Cir. 1998) (internal quotation marks omitted) (quoting U.S.S.G. § 6A1.3(a)). Nonetheless, the preponderance of the evidence standard is the same that is needed to establish damage amounts in civil litigation; the government's burden requires it to do more than merely submit a victim's invoice asserting some dollar figure as its loss amount. *Menza*, 137 F.3d at 538.

### III. ANALYSIS

 AMRESCO Residential Mortgage Corporation ("AMRESCO Residential Mortgage Corp.") purchased many of the mortgages involved in this case, and is the only victim to request restitution. Three of its mortgages—for $33,000, $33,600, and $24,747, respectively, for a total amount lent of $91,347—had gone through foreclosure by the time of sentencing, and AMRESCO Residential Mortgage Corp. limited its MVRA restitution request to its losses on those three mortgages. In its initial request, which the government endorsed, AMRESCO Residential Mortgage Corp. asserted that its loss on the first two loans was the entire loan amount, and that its loss on the third loan was $10,351.76, for a total loss amount of $76,951.76. In a

prior decision, I found that these invoice-like assertions of loss amounts, *Menza*, 137 F.3d at 538, were inadequate to demonstrate the asserted loss amount by a preponderance of the evidence; neither the government nor AMRESCO Residential Mortgage Corp. provided the corporation's basis in the three loans, nor the amount realized from the foreclosure sales.

Both omissions were striking. According to AMRESCO, Inc.—its ultimate parent—AMRESCO Residential Mortgage Corp. is a unit of an AMRESCO division that "specializes in non-conforming, subprime residential mortgages." *AMRESCO Issues $1 Billion of Home Equity Asset–Backed Securities,* (PR Newswire, Feb. 16, 1998, LEXIS, BANKNG Library, PRNEWS File.) No payments were ever made on the first two mortgages, which makes it likely that AMRESCO Residential Mortgage Corp. bought them at a discount from their face values. AMRESCO Residential Mortgage Corp.'s actual basis was thus likely smaller than the $91,347 it stated. Moreover, given the government and AMRESCO Residential Mortgage Corp.'s claim that it was because these properties had finished going through foreclosure that they were chosen as the ones for which restitution was requested, AMRESCO Residential Mortgage Corp.'s failure to identify the amount realized from the foreclosure sales was also striking.

In addition, Stanelle observed in her response brief that according to records at the county register of deeds, the entity that sold the properties at foreclosure was not AMRESCO Residential Mortgage Corp., but a different company altogether, Norwest Bank. Indeed, it appeared that AMRESCO Residential Mortgage Corp. had resold the mortgages to Norwest Bank before the foreclosure sales, which would mean that AMRESCO Residential Mortgage Corp.'s amount realized from the three loans was wholly distinct from the amounts realized by Norwest Bank from the foreclosure sales.

In reply, the government transmitted (but, notably, did not endorse the accuracy of) additional information supplied by AMRESCO Residential Mortgage Corp. The new figures acknowledged that payments on the third mortgage had reduced the principal due by $35.59, and now specified the amounts realized from the foreclosure sales as, respectively, $12,500, $16,000, and $24,100, for a total amount realized of $52,600, and a total loss from the amount originally lent of $38,711.41.

Nonetheless, AMRESCO Residential Mortgage Corp. still did not identify its costs to purchase the three loans. As stated above, in a loan fraud case, the starting point to calculate each victim's MVRA losses is that victim's basis in each fraudulently-obtained loan, and so the corporation's failure to specify its basis made it impossible for the government to satisfy its burden in establishing the corporation's restitution loss amount on the three loans.

In addition, AMRESCO Residential Mortgage Corp.'s reply materials still did not specify the amounts it realized. It stated that on June 1, 1998 it sold all three mortgages to another AMRESCO entity, the AMRESCO Residential Securities Corporation Mortgage Loan Trust Series 1998–2 ("1998–2 Trust"). On the same date, this trust issued 14 classes of mortgage pass-through certificates totaling $1 billion; the underlying mortgages provided the security for the pass-through certificates. *DCR Rates AMRESCO Residential Securities Corporation Mortgage Loan Trust 1998–2 $1 Billion Mortgage Loan Pass–Through Certificates,* (June 12, 1998, LEXIS, BANKNG Library, PRNEWS File.) (Norwest Bank Minnesota, NA, is the trustee of the 1998–2 Trust, which explains why it, rather than AM-

RESCO Residential Mortgage Corp., sold the properties at foreclosure.)

AMRESCO Residential Mortgage Corp. thus conceded that it did not own the mortgages when they went through foreclosure. Nonetheless, it claimed that it was entitled to MVRA restitution for all losses sustained by the mortgages, including any losses sustained by the 1998–2 Trust, because it "retained a residual interest in the Trust, so any losses that are borne by the Trust result in reduced cash flow back to AMRESCO [Residential Mortgage Corp.] as the residual holder." However, it did not specify the size of its residual interest in the trust. (Given that the 1998–2 Trust issued $1 billion worth of certificates, it seems unlikely to be a majority interest.)

Any restitution due to losses sustained after AMRESCO Residential Mortgage Corp. sold the mortgages to the 1998–2 Trust would rightfully belong to the Trust on behalf of investors who bought its certificates. It is therefore disturbing that AMRESCO Residential Mortgage Corp. sought to appropriate such restitution for its own account. And there is no doubt that this is precisely AMRESCO Residential Mortgage Corp.'s position: "So, although it is technically true that Norwest Bank, representing the Trust, reported the losses, AMRESCO [Residential Mortgage Corp.] is the ultimate loser in this transaction." (Letter from Nancy K. Swanson, Vice President, AMRESCO Residential Mortgage Corp., to Assistant U.S. Attorney Steven Biskupic of 7/13/01, at 3.)

It is also of concern that Norwest Bank Minnesota failed to request restitution on behalf of the owners of the 1998–2 Trust certificates, despite being appointed to conserve the trust estate on their behalf. AMRESCO Residential Securities Corporation SEC S–3 filing, ex. 4 (Pooling and Servicing Agreement, AMRESCO Residential Securities Corporation Mortgage Loan Trust 1998–2), art. II, §§ 2.03 to 2.04 at 45, Aug. 24, 1998, LEXIS, BANKNG Library, SEC File.

■ The last item in AMRESCO Residential Mortgage Corp.'s reply was a request for nearly $60,000 in restitution for unspecified "legal fees, property taxes, etc."—about $25,000 for each of the first two properties, and about $10,000 for the third. AMRESCO Residential Mortgage Corp. provided no documentation to support any such costs, and, as we have seen, a victim's mere invoice asserting a loss amount is not sufficient. *Menza,* 137 F.3d at 538. Moreover, incidental or consequential losses are not subject to restitution, and thus a victim may not receive MVRA restitution for its attorneys fees. *United States v. Seward,* 272 F.3d 831, 839 (7th Cir.2001). Likewise, the corporation supplied no evidence that whatever "etc." and property taxes it may have paid "directly resulted from the offenses of conviction." *Menza,* 137 F.3d at 538.

■ AMRESCO Residential Mortgage Corp. did not respond to my previous memorandum and order to show cause why an amended judgment should not issue specifying that no restitution be ordered. In its response, the government conceded that it saw no basis to object to the proposed amended judgment, but asserted that if the corporation pursued civil remedies against Stanelle, 18 U.S.C. § 3664(*l*) would prevent her from contesting her fraudulent conduct. This is mistaken. The statute provides that "[a] conviction of a defendant for an offense involving the act *giving rise to an order of restitution* shall estop the defendant from denying the essential allegations of that offense" in subsequent civil litigation. § 3664(*l*) (emphasis added). If there is no restitution order, § 3664(*l*) simply does not apply.

## IV. CONCLUSION

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the government's motion to set restitution in the amount of $76,951.76 is **DENIED.**

**IT IS FURTHER ORDERED** that an **AMENDED CRIMINAL JUDGMENT SHALL BE ISSUED** specifying that no restitution is ordered as part of defendant Deborah Stanelle's criminal sentence and judgment.