**SHEARSON/AMERICAN EXPRESS, INC., Plaintiff-Appellee,**

v.

**Lynn D. MANN, Defendant-Appellant.**

**No. 86–3198.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 19, 1987.

Decided March 20, 1987.

John W. Leibold, argued, Columbus, Ohio, for defendant-appellant.

Terence L. Fague, Coolidge, Wall, Matusoff, Womsley & Lombard Co., L.P.A., Dayton, Ohio, Roger J. Makley, Molly Cochran, argued, for plaintiff-appellee.

CONTIE, Senior Circuit Judge.

Lynn Mann, defendant-appellant, appeals from the district court's judgment ordering him to pay $26,500 to Shearson/American Express, Inc. (hereinafter referred to as Shearson), plaintiff-appellee. The $26,500 represents the amount of money Shearson paid Mann for 4,000 shares of Cox Electronic Systems, Inc. stock. The district court held that Shearson paid this amount under the mistaken belief that the stock represented shares in Universal Energy Corp., a Washington corporation, when in fact the stock represented shares in Universal Energy, Inc., a Utah corporation. Mann also appeals from the district court's denial of his motion to file a counterclaim.

## I.

Defendant-appellant Mann contacted Shearson in September 1980, to obtain the advice of a stockbroker concerning the stock he owned in Cox Electronic Systems, Inc. (hereinafter referred to as Cox Electronic). He spoke to Sammie Goodman, a salesman in Shearson's Columbus office, and indicated that he believed his stock may have some value. Goodman was unable to locate the stock in the over-the-counter register. Mann asserts that he informed Goodman that Cox Electronic was a Utah corporation; Shearson asserts that Mann informed Goodman that Cox Electronic had been bought out by a company called Universal Energy. Despite this controversy, it is undisputed that Goodman eventually quoted Mann the price per share for stock in Universal Energy Corp., a Washington corporation. It is also undisputed that Cox Electronic had actually been purchased by Universal Energy, Inc., a Utah corporation, and Mann's stock had no value.

Goodman kept Mann informed of the value of Universal Energy Corp. stock over a period of several weeks. On or about November 12, 1980, Mann directed Goodman to sell the stock. Goodman took possession of Mann's Cox Electronic stock certificates, and believing the certificates represented shares of Universal Energy Corp., he sold the stock as Universal Energy Corp. stock. Mann received $26,500 on November 21st in exchange for the stock. Mann was also charged a $500 commission for this transaction. Mann used the proceeds of the sale as down payments on three investment real estate properties. In purchasing these properties, Mann incurred substantial debt obligations.

The operations manager at Shearson's Columbus office, Larry Snouffer, booked the stock on November 14, 1980, as a name change from Cox Electronic to Universal Energy Corp. That entry was changed, however, on November 21, 1980, by the New York office. Snouffer testified that as of November 22nd, he knew that Shearson had not received Universal Energy Corp. stock but had received Cox Electronic stock. On January 9, 1981, a memo from Snouffer indicated that Shearson did not have Universal Energy Corp. stock, but had Cox Electronic stock which belonged to a Utah corporation.

Shearson eventually purchased 4,000 shares of Universal Energy Corp. on the open market for $64,000 to cover the loss resulting from the mistaken sale. Shearson claims to have first learned of the mistaken sale in June 1981. At that time, according to Mann, Richard Laudick, an employee in Shearson's Columbus office, contacted Mann and demanded payment of the $26,500 Shearson had paid him, as well as $64,000—the cost of purchasing the stock to cover its loss. Laudick recollected that he only demanded the amount necessary to cover its loss, approximately $60,000. In any event, Mann refused to pay.

On November 16, 1981, Shearson filed a complaint in the United States District Court for the Southern District of Ohio requesting that the contract with Mann be rescinded on the basis that the stock had

been sold as a result of a mutual mistake of fact. The complaint also requested that Mann be ordered to pay $64,836.40 (cost of purchasing the stock on the open market plus a brokerage commission), that an injunction be issued to prevent Mann from disposing of his property and that any relief deemed appropriate be awarded. Mann filed an answer on November 30, 1981, and an amended answer on September 9, 1982. On July 28, 1982, a United States magistrate ordered that dispositive motions be filed by December 31, 1982. Neither party filed a motion for summary judgment by that deadline.

Pursuant to the court's request, Shearson filed a proposed pre-trial order on June 23, 1983. At such time, Shearson dropped its claim for recovering the cost of purchasing the stock on the open market, but argued that it was "entitled to recover back from defendant [Mann] the proceeds of the sale." In other words, Shearson asserted that it was entitled to receive the $26,500 it had paid Mann. A final pre-trial meeting was held on June 24, 1983; however, trial was not held in November 1983, or March 1985, as initially scheduled.

On July 31, 1985, counsel for Shearson requested that the court set a deadline for filing pre-trial motions. On August 5, 1985, District Judge Spiegel's secretary responded that the deadline for dispositive motions had expired. On November 13, 1985, however, following a settlement conference, Judge Kinneary granted the parties leave to file summary judgment motions. Shearson filed a motion for summary judgment on November 19, 1985, and Mann filed a summary judgment motion on November 18, 1985. Mann also filed a motion for leave to file a counterclaim on December 6, 1985. This counterclaim demanded reimbursement for expenses incurred defending against Shearson's initial claim which had since been abandoned, as well as punitive damages.

A hearing was held before Judge Spiegel on December 6, 1985, at which time Shearson maintained that it only sought rescission of the original transaction and restitution in the amount of $26,500. On January 28, 1986, the district court granted Shearson's summary judgment motion, and denied Mann's motions for summary judgment and for leave to file a counterclaim. The court held that under the rule set forth in *Firestone Tire & Rubber Co. v. Central National Bank of Cleveland,* 159 Ohio St. 423, 112 N.E.2d 636 (1953), Shearson was entitled to restitution. The court noted that it was undisputed that there had been a mutual mistake of fact and that Mann had received the money and benefited therefrom. The court held that a stockbroker is not under an "absolute duty to know the facts, where failure to ascertain facts results in a windfall to the payee." Further, the court held that Mann had not detrimentally changed his position in reliance on the payment, but had "retained the value of the money in three separate investments." The court rejected Mann's assertion that equitable relief could not be granted to Shearson on the basis that Shearson had entered district court with "unclean hands."

The district court also rejected Mann's assertion that the action was barred by laches. In rejecting this defense, the court noted that Mann was not placed in a worse position by the passage of time and that Mann's "strong financial condition" supported this conclusion. The court awarded Shearson prejudgment interest from June 1983, the date Shearson first made its demand for rescission and restitution. The court denied Mann's motion for leave to file a counterclaim—which the court labeled a malicious prosecution claim—because no new issues were raised, no reasons were given for the long delay in asserting the claim or for prolonging the litigation, and the merits of the claim warranted denial of the motion.

Appellant Mann filed a timely notice of appeal on February 27, 1986.

## II.

For a grant of summary judgment to be proper under Fed.R.Civ.P. 56(c), there must be no genuine issue of material fact when viewing the evidence in a light most favorable to the opposing party. *Adickes v.*

*S.H. Kress & Co.*, 398 U.S. 144, 153–57, 90 S.Ct. 1598, 1606–08, 26 L.Ed.2d 142 (1970); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1158 (6th Cir.1980); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). It is a movant's burden to establish that no genuine issue of fact exists. "[T]he papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated." *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962). *See also Watkins*, 630 F.2d at 1158. If no genuine issue of fact exists, the movant is entitled to judgment as a matter of law. *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir.1983).

**A.**

Appellant asserts that the district court erred in granting Shearson's motion for summary judgment. First, he argues that the district court abused its discretion in allowing Shearson to file a summary judgment motion in the first instance. Second, he asserts that there were material issues of fact in dispute. Specifically, he alleges that Shearson was negligent, that Shearson's delay in informing him about the mistake prevents Shearson from recovering the payment and that he changed his position as a result of the mistake. Finally, Mann asserts that Shearson's "unclean hands" barred the court from granting Shearson's request for summary judgment.

1. Leave to File Summary Judgment Motion

■ Appellant argues that on July 28, 1982, the magistrate entered a final pre-trial order setting December 31, 1982, as the deadline for dispositive motions. Accordingly, the appellant argues that the district court could not grant Shearson's request for leave to file a summary judgment motion absent manifest injustice pursuant to Rule 16(e). Alternatively, appellant asserts

that there was not "good cause" under Rule 16(b) to deviate from a scheduling order. Since these arguments were not raised below, however, we decline to review them for the first time on appeal. *See Sigmon Fuel Co. v. TVA*, 754 F.2d 162, 164–65 (6th Cir.1985).

2. Material Issues of Fact

■ Appellant asserts that Shearson's negligence in discovering the mistake, its delay in informing appellant of the mistake, and appellant's incurring three new debt obligations prevent Shearson from being granted summary judgment. We reject his reasoning.

In *Firestone Tire & Rubber Co. v. Central National Bank of Cleveland*, 159 Ohio St. 423, 112 N.E.2d 636 (1953), the court held that if money is paid as a result of a mutual mistake of fact, the payer is presumed to be entitled to recover the money. *See Firestone*, headnotes 2 and 5.[1] Second, the court held that if the payer is negligent in failing to discover the mistake, his negligence does not automatically preclude recovery. *See id.*, headnote 3. Rather, it must be shown that the payer purposefully did not discover the facts or that the payer had a legal duty to discover the facts. Third, the presumption of the payer's right to recover is defeated only if the payee changed his position and it would be unjust to demand a refund. *See id.*, headnotes 4 and 8. Finally, a delay in notifying the payee of the mistaken payment does not defeat a payer's right to recover unless the payee changed his position as a result of the delay. *See id.*, headnote 9. With these rules in mind, we turn to the instant case.

First, we find that the district court's factual conclusion that the money was paid as a result of a mutual mistake of fact is not clearly erroneous. Accordingly, Shearson is entitled to a presumption of recovery. In reaching this conclusion, we note that even though one party could have discovered the mistake, that fact does not

---

**1.** Under Ohio law the syllabus of a decision controls. *Cassidy v. Glossip*, 12 Ohio St.2d 17, 18, 231 N.E.2d 64 (1967); *Hoover v. Garfield*

*Heights Mun. Court*, 802 F.2d 168, 174 n. 7 (6th Cir.1986).

change the conclusion that a mistake was made. *See Ohio Co. v. Rosemeier*, 32 Ohio App.2d 116, 118, 288 N.E.2d 326 (1972).

■ Next, appellant contends that Shearson was negligent in failing to discover the mistake, and appears to assert that since Shearson is a stockbroker it had a duty to discover the mistake. However, as noted above, negligence alone does not defeat recovery. *See Firestone, supra,* headnote 3. Further, under Ohio law, the fact that a payer is a stockbroker does not defeat a claim to recover a mistaken payment; in other words, a stockbroker cannot be said to have an absolute legal duty to discover the facts. *See Rosemeier*, 32 Ohio App.2d at 118, 288 N.E.2d 326 (the fact that the payer is a "stock brokerage firm does not operate to render it solely responsible for a mistake of fact as to the identity of stock to be sold"). Rather, it must be determined whether the payee experienced a "detrimental change of position." *Id.* at 116, 288 N.E.2d 326. Accordingly, whether or not Shearson was negligent in selling the stock is not a material issue of fact in this case.

■ Appellant also asserts that Shearson's failure to inform him of the mistake earlier precludes Shearson from recovering the mistaken payment. He further contends that Shearson's reason for not informing him earlier is a material issue of fact. However, *Firestone* specifies that a delay in and of itself does not necessarily prevent recovery since the key issue is whether the payee changed his position to his detriment as a result of the delay. Similarly, there is no case law supporting appellant's assertion that the payer's reason for delaying may be a material issue. Accordingly, the time Shearson learned of the mistake and its reason for not informing appellant are not material issues of fact, and do not preclude a grant of summary judgment.

Appellant asserts, however, that *Firestone* only requires that the payee change his position, and does not require that the change be a detrimental one. Alternative-ly, appellant asserts that his assuming additional debt obligations constitutes a detrimental change of position.

■ We find that *Firestone* requires that the change in position be a detrimental change. *See Firestone, supra,* headnote 4. This conclusion is supported by the *Rosemeier* case, where an Ohio Court of Appeals held that the payee must return the money to the stockbrokerage firm even though she had used the money to pay off her mortgage. Specifically, the court noted in *Rosemeier* that:

> [T]he defendant merely changed the cash into a paid mortgage and retained the value originally represented by plaintiff's mistaken payment. Since the value of the original payment was retained by the defendant, she has not detrimentally changed her position by liquidating her mortgage.

32 Ohio App.2d at 120, 288 N.E.2d 326. This is to be distinguished from a situation where the mistaken payment is no longer recoverable. *See, e.g., State ex rel. Steger v. Garber*, 17 O.O.3d 153, 157 (Ct.App.1979) (per curiam) (where money received as a mistaken payment from welfare department was used to pay household maintenance expenses, the payee was found to have detrimentally changed her position).

■ While appellant assumed new debt obligations, the value of the mistaken payment has not been lost. We find this case, for analytical purposes, indistinguishable from *Rosemeier*.[2]

### 3. Unclean Hands

■ Appellant argues that Shearson could not be granted summary judgment or equitable relief because Shearson had "unclean hands." First, he asserts that Shearson had never returned the shares to him— i.e., that he had not been placed in "status quo." Since this argument was not raised below, we will not consider it on appeal. *See Sigmon Fuel*, 754 F.2d at 164–65. Although we do not reach the question of whether the failure to return the stock

---

**2.** We also reject appellant's argument that the court improperly considered his net worth since the court clearly rested its decision on appropriate factors.

constitutes "unclean hands," we do hold that the district court erred in failing to order Shearson to return the stock certificates to Mann as part of its restitution order. Accordingly, on remand, the district court should modify its order to this effect.

Second, appellant asserts that Shearson had "unclean hands" because it did not inform him of the mistake quickly. This issue is identical to appellant's argument that delay prevents an award of restitution, an argument which we have already rejected.

■ Finally, appellant argues that Shearson improperly maintained a demand for over $64,000. He notes that the $64,000 claim arose because of Shearson's negligence and that Shearson bargained oppressively. This assertion simply does not support the "unclean hands" rule which requires that " 'the plaintiff ... be guilty of reprehensible conduct with respect to the subject-matter of his suit.' " *Goldberger v. Bexley Properties*, 5 Ohio St.3d 82, 85, 448 N.E.2d 1380 (1983) (quoting *Kinner v. Lake S. & Mich. S.R. Co.*, 69 Ohio St. 339, 69 N.E. 614 (1904)). Accordingly, we affirm the district court on this issue.

### B.

■ Appellant asserts that restitution should not have been granted since Shearson never made a request for restitution in its complaint, but only requested rescission and money damages. Appellant asserts that the district court, in essence, amended Shearson's complaint sua sponte.

However, Shearson's complaint requested "such further legal and equitable relief to which Shearson may be entitled," and Shearson's pre-trial order was construed by the district court to be a demand for restitution. We also note that Rule 54(c), Fed. R.Civ.P., provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Each of these factors supports our finding that appellant's argument is without force. *Cf. Management Investors v. UMW*, 610 F.2d 384, 390 n. 17 (6th Cir.1979) (where an affirmative defense was raised at pre-trial, the fact that the defense was not raised in the pleadings is irrelevant); *Howard v. Kerr Glass Mfg. Co.*, 699 F.2d 330, 333 (6th Cir.1983) (per curiam) ("Issues presented at a pre-trial conference, incorporated in a pre-trial order supercede the pleadings in the case.").

### C.

■ Prejudgment interest can be awarded, even in the absence of statutory authority, on a claim for restitution from the date when demand for restitution was made. *See, e.g., Lane & Bodley Co. v. Day*, 13 Ohio App. 476, 478 (Ct.App.1921) (interest allowed "in order to render full compensation for the use and wrongful detention of money"). *Cf. Essex House v. St. Paul Fire & Marine Ins. Co.*, 404 F.Supp. 978, 995 (S.D.Ohio 1975) (prejudgment interest awarded so as to make party whole). In the instant case, the district court held that a demand was made by Shearson on June 23, 1983, the date in which Shearson dropped its claim for over $64,000 in its proposed pre-trial order.

Appellant first asserts that Shearson never requested prejudgment interest. We reject this assertion since Shearson's complaint clearly sets forth such a request.

■ Next, appellant asserts that Shearson's proposed pre-trial order does not constitute adequate demand for restitution. We disagree, and find that a clear demand for restitution was made in Shearson's proposed pre-trial order. In so holding, we reject appellant's assertion that Shearson was required to file an amended complaint. Concluding that Shearson demanded restitution on June 23, 1983, we affirm the district court's grant of prejudgment interest from that date.

### D.

■ Finally, appellant argues that the district court abused its discretion by denying his motion to file a counterclaim. He asserts that the court should have treated his request liberally since the court treated

Shearson's requests liberally. He also asserts that the court was incorrect in characterizing his claim as a claim for malicious prosecution since it was essentially a negligence claim, and that the court was incorrect in noting that attorney's fees could not be included as a portion of compensatory damages.

Fed.R.Civ.P. 13(f) provides:

When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment.

Granting a motion for leave to file a counterclaim is reserved to the sound discretion of the district judge, and may be reversed only upon a showing of abuse of discretion. *Rohner, Gehrig & Co. v. Capital City Bank,* 655 F.2d 571, 576 (5th Cir.1981).

In the instant case, the trial court reasoned that the counterclaim did not raise new issues, that no reasons were given for the long delay or for prolonging the litigation, and that the claim itself was meritless. We find each of these reasons to be adequate justification for the court's decision, and do not find an abuse of discretion. *Cf. M. & T. Chems., Inc. v. International Business Machs. Corp.,* 403 F.Supp. 1145, 1147 (S.D.N.Y.1975) (will not grant leave to amend complaint if claim is legally insufficient or lacks merit), *aff'd mem.,* 542 F.2d 1165 (2d Cir.), *cert. dismissed,* 429 U.S. 1030, 97 S.Ct. 656, 50 L.Ed.2d 637 (1976); *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation,* 632 F.2d 21 (6th Cir.1980) (per curiam) (not abuse of discretion to deny motion for leave to amend complaint if it would not withstand a motion to dismiss). We agree with the district court that appellant's counterclaim is essentially equivalent to his defense. He reiterates that Shearson was negligent, that Shearson should have informed him of the mistake earlier, and that Shearson should never have filed its $64,-000 claim. We have explained above why these facts are inadequate to form a defense for a restitution claim; we also conclude that they do not support a negligence or malicious prosecution claim. We therefore affirm the district court's denial of appellant's motion for leave to file a counterclaim.[3]

Accordingly, we REMAND this case to the district court with directions to modify its January 28, 1986 order to require Shearson to release the Cox Electronic stock certificates to Mann. The order of the district court is AFFIRMED in all other respects.

---

**3.** We do not reach the issue of whether attorney's fees can be awarded as part of compensatory damages since we uphold the court's judgment on other grounds.