10-348-cr
USA v. Qurashi

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2010

(Argued: November 15, 2010      Decided: March 8, 2011)

Docket No. 10-348-cr

--------------------------------------------------------x

UNITED STATES OF AMERICA,

          Appellee,

                    -- v. --

IMRAN QURASHI,

          Defendant-Appellant.

--------------------------------------------------------x

B e f o r e :  NEWMAN, WALKER, and POOLER, Circuit Judges.

Appeal from an order of restitution entered by the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, Judge) following Defendant-Appellant Imran Qurashi's plea of guilty to a nine-count indictment for insurance fraud. Qurashi argues it was error for the district court to add prejudgment interest to the restitution awarded to the defrauded insurers. We hold that a prejudgment interest award can be included in a criminal restitution order to ensure that a

victim's losses are fully compensated.  We also remand to allow the district court to conform the statement of reasons supporting the sentence to Qurashi's stipulation with the government.

AFFIRMED and REMANDED.

NORMAN TRABULUS, New York, NY, for Defendant-Appellant.

CHARLES P. KELLY, Assistant United States Attorney (Loretta E. Lynch, United States Attorney for the Eastern District of New York, Emily Berger, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellee.

JOHN M. WALKER, JR., Circuit Judge:

Defendant-Appellant Imran Qurashi ("Qurashi") appeals from a January 16, 2010 order of restitution entered by the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, Judge) following his guilty plea to a nine-count indictment charging him with insurance fraud.  Qurashi argues that the district court abused its discretion by including prejudgment interest in the restitution awarded to the defrauded insurers.  We affirm the district court's judgment and hold that prejudgment interest can be awarded in a criminal restitution order to ensure that a victim's losses are fully compensated.  We reject Qurashi's argument that he was prejudiced by the district court's failure to determine the victims' losses within the 90-day statutory window.  Finally, we remand to allow the district court to conform the statement of reasons supporting the sentence

2

to Qurashi's stipulation with the government.

**BACKGROUND**

Qurashi twice faked his brother's death to collect millions of dollars in life insurance proceeds; it was only after the second time that he was caught. In 1993 and 1994, Qurashi and his brother, Adnan Qurashi ("Adnan"), purchased two $3 million life insurance policies on Adnan's life from the Metropolitan Life Insurance Company ("MetLife") and New York Life Insurance Company ("New York Life"). In 1995, Qurashi submitted claims to both companies that falsely asserted that Adnan had died in a car accident in Pakistan. The following year, the insurers paid Qurashi more than $6 million on the policies.

Adnan, still very much alive, returned to the United States from Pakistan in November 1998, whereupon he assumed a new identity as Qurashi's fictitious cousin "Hassan Khan." Flushed with success, Qurashi upped the ante: between 2000 and 2004, he purchased eight $10 million life insurance policies on Hassan Khan's life from four insurance companies. History repeated itself in 2004: Hassan Khan was purportedly killed in a traffic accident in Pakistan, and Qurashi falsely claimed proceeds on all eight policies. This time, however, the insurance companies refused to pay and opened investigations.

An indictment returned on June 28, 2005 charged Qurashi and

3

Adnan with one count of conspiracy to commit mail fraud and eight counts of mail fraud. Adnan remains a fugitive. After Qurashi entered a guilty plea, District Judge Sandra J. Feuerstein sentenced him in October 2008 to concurrent imprisonment terms of 60 months on the conspiracy charge and 108 months on the mail fraud charges, plus three years of supervised release. Judge Feuerstein deferred the determination of restitution, at the government's request, to allow time to ensure that every insurance company had been accounted for. Qurashi agreed to waive his right to appeal the sentence "as long as the sentence is 121 months or less." The government concedes, however, that because Qurashi's waiver referred only to the prison term, it does not bar this appeal from the restitution order.

On January 22, 2009, the government submitted a proposed order of restitution, to which Qurashi objected. Judge Feuerstein referred the determination of restitution to Magistrate Judge A. Kathleen Tomlinson, who held a hearing and issued a report and recommendation. The district court adopted the report and recommendation, and rejected Qurashi's objections. Judge Feuerstein entered judgment and signed a "Statement of Reasons" regarding Qurashi's sentence on January 16, 2010, and shortly thereafter overruled Qurashi's objection that the restitution order was untimely. The order included prejudgment interest at a rate of 4 percent. This appeal, confined to the

4

restitution order, followed.

**DISCUSSION**

Qurashi argues that the district court erred by including prejudgment interest in its restitution award to New York Life and MetLife. Because the insurers failed to demonstrate how their money would have been used if it had not been paid out to Qurashi, he contends that prejudgment interest compensates the insurers for more than their actual losses. Qurashi further claims that he was prejudiced by the district court's failure to comply with a 90-day statutory deadline for determining the victims' losses.

We review orders of restitution deferentially, and "will reverse only for abuse of discretion." United States v. Boccagna, 450 F.3d 107, 113 (2d Cir. 2006) (internal quotation marks omitted). Such abuse can be found only where the "challenged ruling 'rests on an error of law [or] a clearly erroneous finding of fact, or otherwise can not be located within the range of permissible decisions.'" Id. (quoting United States v. Gonzalez, 420 F.3d 111, 120 (2d Cir. 2005)).

**I. Prejudgment Interest**

In February 1996, MetLife paid Qurashi $3,201,592.76 on Adnan's life insurance policy, and New York Life paid Qurashi

5

$3,069,616.44 the following month on a similar policy. The district court ordered restitution of those insurance payments, which Qurashi had obtained both by overstating his and Adnan's net worth when he purchased the policies and by submitting a fraudulent death certificate to verify Adnan's purported death. The restitution order also required Qurashi to pay prejudgment interest on those sums at 4 percent to compensate the insurers for the loss of the use of their money. Qurashi argues that the district court erred in awarding prejudgment interest. He does not, however, challenge the rate, other than to note that the rate claimed was less than the rate of return on portfolio investment.

The Mandatory Victims Restitution Act ("MVRA") requires that a defendant convicted of specific offenses "in which an identifiable victim or victims has suffered a . . . pecuniary loss" be ordered to make restitution to the victim.  18 U.S.C. § 3663A(a)(1), (c)(1). The defendant must "pay an amount equal to . . . the greater of . . . the value of the property" on the date of the loss or on the date of sentencing, less "the value (as of the date the property is returned) of any part of the property that is returned." Id. § 3663A(b)(1)(B). "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic

circumstances of the defendant." Id. § 3664(f)(1)(A).

Qurashi's appeal poses a question of first impression in this Circuit: whether a criminal restitution order may include prejudgment interest. In a non-precedential summary order, we recently affirmed a district court's inclusion of lost investment returns in a restitution order. United States v. Scott, 321 F. App'x 71 (2d Cir. 2009). The defendant in Scott had stolen money from three retirement accounts, two of which "would have increased in value by the date of the sentencing" had the assets remained in those accounts. Id. at 72. It was also apparent that "the funds would have remained in those accounts but for" the theft. Id. Given those facts, we concluded that "the actual value of the stolen property, the funds in the retirement accounts, at the time of sentencing was the nominal value of the stolen funds plus the subsequent investment gains lost as a result of the theft," which meant the district court had "appropriately included in the restitution award the investment earnings that would have accrued as of the date of sentencing." Id.

The MVRA requires sentencing courts to order restitution of the property's value "on the date of sentencing" if that figure is greater than the property's value on the date of loss. 18 U.S.C. § 3663A(b)(1)(B). The district court in Scott did so by calculating the value that the affected investment accounts would

have reached as of the sentencing date had the money not been stolen. See Scott, 321 F. App'x at 72. In this case, MetLife and New York Life did not document what would have happened to the insurance proceeds they paid to Qurashi. Although both requested prejudgment interest and supported those requests with affidavits of company officials, neither made any representations as to how their money would have been used absent Qurashi's fraud. The funds were not, as in Scott, stolen from specific investment accounts whose gains and losses between the date of the fraud and the date of the sentencing could be tracked.

Qurashi argues that the absence of tracking is a fatal flaw. Prejudgment interest is only appropriate, he contends, where a victim had a contractual right to interest on the funds at issue. Absent a showing as to what MetLife and New York Life would have done with the money that went to Qurashi, he argues, the district court erred in awarding prejudgment interest on that amount. Ordinary prejudgment interest, in Qurashi's view, amounts to an award of expectation damages and therefore exceeds the proper scope of restitution.

"[T]he purpose of restitution is essentially compensatory: to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury." Boccagna, 450 F.3d at 115. The "primary and overarching" goal of the MVRA is "to make victims of crime whole, to fully compensate these

8

victims for their losses and to restore these victims to their original state of well-being." Id. (quoting United States v. Simmonds, 235 F.3d 826, 831 (3d Cir. 2000)). We think it significant that the statute mandates that courts "order restitution to each victim in the full amount of each victim's losses as determined by the court[.]" 18 U.S.C. § 3664(f)(1)(A) (emphasis added). However, the award cannot "allow[] a victim to recover more than his due." United States v. Nucci, 364 F.3d 419, 424 (2d Cir. 2004).

We have "construe[d] 'value' as used in the MVRA to be a flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purpose." Boccagna, 450 F.3d at 115. The value determinations at issue in Boccagna were for real property, and flexibility was necessary "because the law recognizes a number of reasonable measures of property value." Id. Although the same complexity does not inhere in value determinations where the property lost is cash, accounting for the time-value of money requires no less flexibility. If sentencing courts are required to compensate victims for "the full amount of each victim's losses," there is no reason to exclude losses that result from the deprivation of the victim's ability to put its money to productive use. In light of the inherent difficulty of determining in the "but for" world the earnings that would have resulted from the use of the

9

wrongfully acquired funds, prejudgment interest stands in to provide a rough but fair approximation of such losses.

Where Congress has not spoken specifically to the availability of interest, courts are to resolve the question by appraising "the congressional purpose in imposing [the statutory obligation] and in the light of general principles deemed relevant by the Court." Rodgers v. United States, 332 U.S. 371, 373 (1947). The MVRA's purpose of compensating victims for their losses is advanced by allowing prejudgment interest, the "essential rationale" for which "is to ensure that an injured party is fully compensated for its loss." City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 195 (1995). Recognizing that a victim's losses may change in value between the date of the loss and the date of sentencing, the MVRA mandates that the higher of those figures be used for restitution purposes. Money is not static, and companies do not store their reserves under mattresses for safekeeping. The rule urged by Qurashi would presume that victims do precisely that, placing on them the burden of showing how they would have used the lost funds in order to justify an award of prejudgment interest. The MVRA does not impose such a requirement.

We hold that the MVRA allows a sentencing court to award prejudgment interest in a criminal restitution order to ensure compensation "in the full amount of each victim's losses." 18

10

U.S.C. § 3664(f)(1)(A). The district court therefore acted within its discretion in awarding prejudgment interest on funds that it determined MetLife and New York Life would have otherwise put to productive use. This outcome is consistent with the decisions of our sister circuits, which have approved the inclusion of prejudgment interest in restitution orders under the MVRA and its precursor, the Victim and Witness Protection Act ("VWPA"). See, e.g., United States v. Gordon, 393 F.3d 1044, 1059 (9th Cir. 2004); United States v. Shepard, 269 F.3d 884, 886 (7th Cir. 2001); Gov't of the Virgin Islands v. Davis, 43 F.3d 41, 47 (3d Cir. 1994); United States v. Hoyle, 33 F.3d 415, 420 (4th Cir. 1994); United States v. Patty, 992 F.2d 1045, 1050 (10th Cir. 1993); United States v. Rochester, 898 F.2d 971, 983 (5th Cir. 1990).

Gordon sensibly suggests a rule that prejudgment interest be awarded unless evidence indicates the victim would not have put the funds to productive use. The Ninth Circuit upheld the district court's award of prejudgment interest for embezzled cash and shares of stock as to which Cisco Systems, the victimized corporation, had "completely liquidated" its other holdings before discovering the fraud. Gordon, 393 F.3d at 1059. Regarding "interest" as "simply a proxy for a lost opportunity," the Ninth Circuit found that awarding "prejudgment interest reflects the productive purposes for which a profit maximizing

11

entity like Cisco uses its cash reserves," even if the company "would not necessarily have placed its stock proceeds in an interest bearing account" absent the embezzlement. Id. (internal quotation marks omitted). However, the Ninth Circuit also found that the district court abused its discretion in awarding prejudgment interest for securities that Cisco had "no intention of completely liquidating." Id. Prejudgment interest on such securities could not "constitute an actual loss to the victim," because it would be "too speculative to conclude that Cisco would have liquidated these securities and placed the cash proceeds in an interest bearing account or used them for some other productive purpose." Id. at 1059-60 (internal quotation marks omitted). We need not, in the case before us, definitively opine as to when a district court's inclusion of prejudgment interest would constitute an abuse of discretion. It is plain to us that, in the absence of evidence that New York Life and MetLife would not have put the money at issue to productive use, no such abuse occurred here.

Prejudgment interest does not, as Qurashi argues, amount to expectation damages. Expectation damages "strive to place an 'aggrieved party in the same economic position it would have been in had both parties fully performed' their contractual obligations." Boccagna, 450 F.3d at 119 (quoting Bausch & Lomb v. Bressler, 977 F.2d 720, 729 (2d Cir. 1992)). Criminal

12

restitution, by contrast, "is not concerned with a victim's disappointed expectations but only with his actual loss." Id. In Boccagna, the U.S. Department of Housing and Urban Development ("HUD") acquired title to dozens of properties after a developer defaulted on its fraudulently obtained HUD-guaranteed mortgage loans, which were meant to encourage development of affordable housing. Id. at 109-10. HUD then sold the properties for a nominal price to a New York City agency for development as low-income housing, and sought restitution for the difference between the discounted sale price and fair market value. Id. at 110. Because HUD sold the properties at a discount to achieve the benefit of its bargain, namely affordable housing, the Second Circuit concluded that restitution "would, in effect, be expectation damages," which cannot be awarded under the MVRA. Id. at 119. Here, the prejudgment interest award is not meant to guarantee the benefit of any bargain, but is designed to ensure that the insurer victims are fully compensated for their actual loss, which includes the loss of the ability to put their money to productive use.

## II. Timeliness of Restitution Award

When a "victim's losses are not ascertainable by the date that is 10 days prior to sentencing," the MVRA provides that "the court shall set a date for the final determination of the

13

victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). Magistrate Judge Tomlinson held Qurashi's restitution hearing on February 11, 2009, more than 90 days following his October 29, 2008 sentencing, and the district court did not enter the restitution order until September 30, 2009. The district court rejected Qurashi's objection that the restitution determination was untimely, which he renews on appeal.

During the pendency of this appeal, the Supreme Court decided Dolan v. United States, 130 S. Ct. 2533 (2010). Interpreting § 3664(d)(5), the Court held that "a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution - at least where . . . the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." Dolan, 130 S. Ct. at 2537. Here, the district court made clear at sentencing that it would order restitution, and therefore retained the power to do so. The Supreme Court further provided that, "in the unlikely instances where that delay does cause the defendant prejudice - perhaps by depriving him of evidence to rebut the claimed restitution amount - the defendant remains free to ask the court to take that fact into account upon review." Id. at 2542. Although Qurashi argues that he was prejudiced by the delay, we find no evidence of prejudice and

14

therefore conclude that the district court properly asserted its authority to award restitution.

**III. Statement of Reasons**

Following his guilty plea, Qurashi and the government stipulated to a Sentencing Guidelines offense level of 30 and a Guidelines range of 97 to 121 months. The government recommended a sentence at the lower part of the range. On October 29, 2008, Judge Feuerstein imposed a sentence consistent with this stipulation: concurrent imprisonment terms of 60 months on the conspiracy charge and 108 months on the mail fraud charges, plus three years of supervised release. However, in the "Statement of Reasons" that she signed more than a year later, on January 16, 2010, Judge Feuerstein noted that the court had imposed an above-range sentence for offense level 28, for which the imprisonment range is 78 to 97 months. Thus, despite the stipulation to a sentence within the range established by Guidelines level 30, Judge Feuerstein characterized the sentence as above-range for Guidelines level 28.

Qurashi has requested that we remand to allow the district court to amend the statement of reasons to reflect or otherwise account for the stipulation. The government has no objection to this request. As it appears that the district court's departure from the stipulation may have been inadvertent, a remand is

15

appropriate.  See United States v. Stuckey, 317 F. App'x 48, 51 (2d Cir. 2009) (remanding to allow district court to correct erroneous failure to complete the "Statement of Reasons" portion of the judgment form).  We therefore remand for the limited purpose of allowing the district court to amend the statement of reasons to correctly reflect or otherwise account for the parties' stipulation.

**CONCLUSION**

We have considered Qurashi's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is AFFIRMED.  We REMAND to allow the district court to amend the statement of reasons supporting Qurashi's sentence.