RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

IRENE MICHELLE FIKE,

*Defendant-Appellant.*

> No. 24-5857

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:24-cr-00001-1—Gregory F. Van Tatenhove, District Judge.

Decided and Filed: June 10, 2025

Before: GILMAN, DAVIS, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Rachel D. Yavelak, Russell Baldani, BALDANI LAW GROUP, Lexington, Kentucky, for Appellant. John M. Spires, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

───────────────

## OPINION

───────────────

DAVIS, Circuit Judge. Irene Michelle Fike appeals from the district court's restitution award to the victim that Fike defrauded. She asks that we vacate the district court's inclusion of prejudgment interest in that award. Fike argues that the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A, does not permit courts to add interest as part of an award compensating a victim's losses, and what's more, the district court did not have a sufficient basis

for calculating the interest awarded here.  Because the district court did not abuse its discretion, we affirm.

## I.

From 2016 to 2021, Fike worked at an accounting firm, where she performed bookkeeping tasks for one of the firm's clients, J.M. and J.M.'s family.  When Fike left the firm in 2021, J.M. hired her as an independent contractor, entrusting her to pay bills, update financial records, and complete other bookkeeping tasks.  Fike exploited her position, first at the accounting firm and then as an independent contractor, to defraud J.M.  Fike used her access to J.M.'s financial accounts at Morgan Stanley and WinFirst Financial to pay Fike's personal credit card bills.  She also used J.M.'s financial information and means of identification to buy items from online retailers, such as, Kohls and Amazon.  To conceal her fraud and avoid arousing the family's suspicions, Fike misrepresented J.M.'s expenditures and debits in financial reports.  Fike continued her fraudulent conduct even after she stopped working for J.M. around February 2022.  Between April 2018 and September 2022, Fike defrauded J.M. of $363,657.67.

In 2024, Fike pleaded guilty to a two-count information charging her with wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. § 1028A.  The district court subsequently sentenced Fike to thirty-six months' imprisonment, followed by three years of supervised release.  It also ordered her to pay J.M. $405,867.08 in restitution under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A.  This sum included the principal amount of $363,657.67, plus $42,209.41 in prejudgment interest, which the district court considered necessary to make J.M. whole.  The district court waived post-judgment interest.  Fike timely appealed, arguing that the MVRA does not authorize prejudgment interest and that the amount of prejudgment interest ordered by the district court is speculative.

We review the propriety of a restitution order de novo and the amount of restitution awarded under the abuse-of-discretion standard.  *United States v. Church*, 731 F.3d 530, 535 (6th Cir. 2013).  "Because federal courts have no inherent power to award restitution, restitution orders are proper only when and to the extent authorized by statute."  *Id.*  (internal quotation

marks omitted) (quoting *United States v. Evers*, 669 F.3d 645, 655–56 (6th Cir. 2012)).  We will reverse a restitution award for abuse of discretion only when we are "left with the definite and firm conviction that the [district] court committed a clear error of judgment."  *United States v. Batti*, 631 F.3d 371, 379 (6th Cir. 2011) (citation omitted).

## II.

The parties agree that Fike pleaded guilty to a fraud offense with an "identifiable victim," J.M., who suffered a "pecuniary loss," triggering the MVRA's requirement that the district court award restitution.  *See* 18 U.S.C. § 3663A(a)(1), (c)(1).  In the plea agreement, the parties agreed to a restitution amount of $363,657.67, which represented the principal that Fike stole from J.M.'s accounts.  Their only dispute is over the $42,209.41 in prejudgment interest, which the district court awarded in addition to the principal.  Fike says that because the MRVA is "silent on the issue of interest," it does not authorize the district court to award interest as part of a victim's restitution.  (ECF 21, Appellant Br., 12).  Fike also argues that the district court had an insufficient basis for calculating the interest because it relied on J.M.'s declaration of losses, which was "speculative at best."  (*Id.* at 7).

### A.  Awarding Interest under the MVRA

When a fraud offense results in a victim's loss of property, as it did here, the defendant must either "return the property to the owner," or, if the property's return is impossible or inadequate, "pay an amount equal to" the greater of "the value of the property on the date of the damage, loss, or destruction" or "the value of the property on the date of sentencing."  18 U.S.C. § 3663A(b)(1).  In making this determination, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."  *Id.* § 3664(f)(1)(A).

Fike argues that, under the MVRA, her return of J.M.'s stolen property—the $363,657.67 negotiated in the plea agreement—was the most restitution that the district court could order. The MVRA does not explicitly state that interest is part of "the value of the property," Fike says, and no published Sixth Circuit case has held that the MVRA permits interest as part of restitution.  (ECF 21, Appellant Br., 13).  Fike recognizes that, under certain circumstances,

interest technically could be considered a form of "lost income" under 18 U.S.C. § 3663A(a)(4). But she says none of the conditions that would trigger an award of lost income are present here. For these reasons, Fike argues that the district court abused its discretion in awarding interest and that its decision must be vacated.

As an initial matter, we have not categorically ruled out the recovery of interest as part of restitution. To the contrary, we have acknowledged in an unpublished opinion that the MVRA does not exclude interest from a restitution award because "[r]estitution does not need to equal the loss amount." *United States v. Cox*, 665 F. App'x 457, 462 (6th Cir. 2016) ("Restitution is calculated under 18 U.S.C. § 3663A and U.S.S.G. § 5E1.1, and those provisions do not exclude bargained-for interest . . . from a restitution award." (quoting *United States v. Rutley*, 482 F. App'x 175, 179 (7th Cir. 2012))). And we have long held outside the MVRA context that "[p]rejudgment interest can be awarded, even in the absence of statutory authority, on a claim for restitution from the date when demand for restitution was made." *Shearson/Am. Express, Inc. v. Mann*, 814 F.2d 301, 307 (6th Cir. 1987) (internal quotation marks and citation omitted) (applying Ohio law).

A clear majority of our sister circuits have interpreted the MVRA and its predecessor, the Victim and Witness Protection Act of 1982 ("VWPA"), to permit an award of prejudgment interest when it more fully compensates the victim's loss. *See, e.g., United States v. Gordon*, 393 F.3d 1044, 1059 (9th Cir. 2004), *abrogated on other grounds by Lagos v. United States*, 584 U.S. 577 (2018) ("A number of other circuits have likewise held that restitution under the MVRA or the VWPA may include prejudgment interest. . . . Prejudgment interest reflects the victim's loss due to h[er] inability to use the money for a *productive* purpose, and is therefore necessary to make the victim whole." (internal quotation marks and citation omitted)); *United States v. Qurashi*, 634 F.3d 699, 704 (2d Cir. 2011) ("We hold that the MVRA allows a sentencing court to award prejudgment interest in a criminal restitution order to ensure compensation 'in the full amount of each victim's losses.'" (quoting 18 U.S.C. § 3664(f)(1)(A))); *United States v. Fumo*, 655 F.3d 288, 321 (3d Cir. 2011), *as amended* (Sept. 15, 2011); *United States v. Alexander*, 679 F.3d 721, 731 (8th Cir. 2012); *United States v. Huff*, 609 F.3d 1240, 1247 n.4 (11th Cir. 2010); *United States v. Hoyle*, 33 F.3d 415, 420 (4th Cir. 1994); *United States v. Patty*, 992 F.2d 1045,

1050 (10th Cir. 1993); *United States v. Simpson*, 8 F.3d 546, 552 (7th Cir. 1993); *United States v. Rochester*, 898 F.2d 971, 983 (5th Cir. 1990).  Fike recognizes this consensus but urges a different result here.

We agree with our sister circuits.  The Second Circuit, for example, rightly concludes that the MVRA explicitly recognizes "that a victim's losses may change in value between the date of the loss and the date of sentencing." *Qurashi*, 634 F.3d at 703; *see* 18 U.S.C. § 3663A(b)(1)(B). This change in value is commonly known as the time value of money—a financial principle that formulates how "a sum is worth more now than it will be at a future date because of its earnings potential in the interim." *Time Value of Money*, Investopedia, https://www.investopedia.com /terms/t/timevalueofmoney.asp (last visited May 16, 2025).  Fike's counsel recognized this principle at sentencing: "[W]e all understand the time value of money, Your Honor . . . and this isn't a small amount of money." (Sent. Tr., R. 35, PageID 195).  In other words, "[m]oney is not static, and companies do not store their reserves under mattresses for safekeeping." *Qurashi*, 634 F.3d at 703.  A deprivation of property over twenty years incurs a greater loss than a deprivation of that same property over five years.  Interest reflects that change in value.  Thus, "prejudgment interest . . . ensure[s] compensation 'in the full amount of [the] victim's losses.'" *Id.* at 704 (quoting 18 U.S.C. § 3664(f)(1)(A)).  The MVRA gives district courts discretion to award prejudgment interest as part of restitution when that interest is necessary to make the victim whole. *See* 18 U.S.C. §§ 3663A(b)(1), 3664(f)(1)(A).

This reading of the MVRA aligns not only with that of our sister circuits, but also with our longstanding approach to awarding interest in other contexts. *See, e.g.*, *Mann*, 814 F.2d at 307 (awarding prejudgment interest as part of restitution award under Ohio law to make victim whole); *W. Hills Farms, LLC v. ClassicStar Farms, Inc.*, 727 F.3d 473, 495 (6th Cir. 2013) (affirming award of prejudgment interest on RICO damages award, finding it "an element of complete compensation").  The MVRA's silence on interest in no way undermines our conclusion.  Even when a statute does not mandate an award of prejudgment interest, a district court can award it at its own discretion under general equitable principles. *W. Hills Farms*, 727 F.3d at 495.

The district court did not abuse its discretion in finding that prejudgment interest more fully compensated J.M.'s losses.  Fike argues that her return of the principal adequately redresses J.M.'s injury and that the government has not proven otherwise.  The government counters that J.M.'s lost "ability to invest that money or otherwise put it to productive use" is "the exact kind of loss that an award of interest is intended to alleviate because simply repaying the principal stolen would not adequately restore the victim."  (ECF 23, Appellee Br., 8).  We agree.  When Fike stole $363,657.67 from J.M. between 2018 and 2022, she severed J.M.'s ability to earn interest on those funds.  Because of the time value of money, the funds' value at sentencing had decreased from their value at the time of the fraud.  So the district court was justified in finding the return of the principal inadequate.  Awarding interest enabled the district court to "render full compensation for the use and wrongful detention of [J.M.'s] money" over the intervening years.  *Mann*, 814 F.2d at 307 (citation omitted).[1]

## B.  The District Court's Interest Calculation

Fike also argues that the district court's interest calculation was "speculative at best" because it credited J.M.'s declaration of losses without considering any other evidence.  (ECF 21, Appellant Br., 7).  According to Fike, the declaration was unreliable and provided "no foundation" for the amount requested.  (*Id.*).  We disagree.

Restitution awards must reflect the victim's "actual loss," and the government bears the burden of proving that loss by a preponderance of the evidence.  *United States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015); 18 U.S.C. § 3664(e).  "Although the MVRA does not require courts to calculate restitution with *exact* precision, *some* precision is required—[s]peculation and rough justice are not permitted."  *Kilpatrick*, 798 F.3d at 388 (alteration in original) (internal quotation marks and citation omitted).  The "district court need not make specific factual findings," but "the information underlying an award must have sufficient indicia of reliability to support its probable accuracy."  *United States v. Sawyer*, 825 F.3d 287, 294–95 (6th Cir. 2016) (internal quotation marks and citation omitted).  The district court was not required to limit its

---

[1]Because the district court had a sufficient basis for awarding interest as part of the "the full amount of [J.M.'s] losses," 18 U.S.C. § 3664(f)(1)(A), we need not address whether interest would separately qualify as "lost income" under § 3663A(a)(4).

restitution award to the amount specified in the presentence report. *Id.* at 298. Nor was it bound by the negotiated amount in the plea agreement, which stated that its recommendation, including the provision that "restitution is $363,657.67," "does not bind the Court." (Plea Agreement, R. 7, PageID 20–21). *See United States v. Elson*, 577 F.3d 713, 722 (6th Cir. 2009), *abrogated on other grounds by Lagos*, 584 U.S. 577.

The district court offered sufficient rationale as to why the interest calculation presented a reliable basis for awarding interest. It first acknowledged the "extraordinary" and "rare[]" efforts that Fike made to pay the full negotiated restitution amount, which it characterized as the right "starting point." (Sent. Tr., R. 35, PageID 202, 205). It then "carefully considered" J.M.'s declaration of losses, which J.M. submitted under penalty of perjury. (*Id.* at 208). It concluded that the declaration's articulation of interest through May 2024 sufficiently justified an award through May, but not beyond. The district court denied J.M.'s request for an additional $25,000 in restitution—money that J.M. says she paid professionals to recover the funds—because J.M. did not provide "adequate itemization." (*Id.*). The district court's decision to award interest when J.M. provided itemization, but not to award interest or additional restitution when she did not, shows that it exercised "*some* precision" in reaching its conclusion. *Kilpatrick*, 798 F.3d at 388. The district court also reasonably relied on the fact that J.M. submitted her declaration of losses under penalty of perjury, which, combined with the itemized calculation, provided "sufficient indicia of reliability to support [the declaration's] probable accuracy." *Sawyer*, 825 F.3d at 294–95 (citation omitted).

Fike counters that J.M.'s declaration was "self serving." (ECF 21, Appellant Br., 11). She insists that the district court should have required more rigorous evidence, like "financial documents" or "witnesses" or "cross examination [of J.M.]." (*Id.* at 6, 9). But a "'self-serving' affidavit is not inherently incredible." *Martin v. United States*, 889 F.3d 827, 833 (6th Cir. 2018) (collecting cases). And a victim's credited testimony can sufficiently establish the loss amount for restitution. *See United States v. Whitfield-Neeley*, No. 24-3452, 2025 WL 1088292, at *3 (6th Cir. Apr. 8, 2025); *see also United States v. Kuo*, 620 F.3d 1158, 1167 (9th Cir. 2010) ("[V]ictim affidavits will generally provide sufficient, reliable evidence to support a restitution order." (citation omitted)). Having found the declaration reliable, the district court did not need

to elicit other evidence or subject J.M. to cross examination.  Resisting this conclusion, Fike says that, beyond notarization, the declaration had "no other indices of reliability" for the numbers it applied.  (ECF 21, Appellant Br., 9).  But Fike does not challenge the total dollar amounts, years, or math.  Indeed, when the district court asked Fike's counsel if he disagreed with the declaration's mathematical calculation, he responded that he would "use the word 'fail to understand' rather than 'disagree.'"  (Sent. Tr., R. 35, PageID 196).  And we find no mathematical error in the compound-interest calculation, which the district court credited.  Fike's only real challenge to the numbers is that J.M. did not "prove[]" the relevant interest rates.  (ECF 21, Appellant Br., 11).  Yet Fike offers no alternative interest rate or explanation why J.M.'s rates were untrustworthy.  To demonstrate an abuse of discretion, Fike must show that the declaration's interest-rate calculation lacked sufficient indicia of reliability or rested on mere speculation; she does not make this showing.

To the contrary, the declaration's interest-rate calculation rested on sufficient evidence. J.M. explained that she "suffered substantial loss of a retirement, education, or other savings or investment fund," and that her "[m]oney is held at Morgan Stanley and so is tied to the money market rate."  (Decl. of Victim Losses, R. 24-1, PageID 98–99).  She attested to the fact that the money market rate was "in the 2% range" from 2018 to 2022 and "5%" from 2023 through May 2024.  (*Id.*).  She then applied those yearly interest rates to the defrauded funds in a compound-interest calculation, beginning in 2018 and ending in May 2024.  J.M.'s application of the money-market rate—the rate she receives at her bank—rested on more than mere "speculation." *Kilpatrick*, 798 F.3d at 388.  There is nothing speculative about J.M.'s assertion that, had the money rightfully remained in her account(s), she would have earned interest on it at the standard rate her bank offers.  Unsatisfied, Fike questions which accounts the money came from, whether the accounts were interest-bearing, what amounts were withdrawn, and the lack of accounting for taxes or market adjustments.  But the district court was not required to make "specific factual findings"—Fike acknowledges as much. *Sawyer*, 825 F.3d at 294.  And based on the typically interest-bearing types of funds identified in J.M.'s declaration as the source of the loss—i.e., retirement, education, savings or investment—the district court could reasonably infer that the source account(s) paid interest.  What's more, how the money was withdrawn does not change the undisputed amounts stolen; the interest rate already accounts for market adjustments; and

taxes are irrelevant to calculating the interest J.M. could have earned.  The district court need not engage in "a precise mathematical inquiry"; rather, it must exercise its "discretion and sound judgment," which it did here.  *Paroline v. United States*, 572 U.S. 434, 459 (2014).

**III.**

We AFFIRM.