In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1569

United States of America,

Plaintiff-Appellee,

v.

Everett V. Shepard,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:00-30154-01-GPM--G. Patrick Murphy, Chief Judge.

Argued September 17, 2001--Decided October 23, 2001


   Before Coffey, Easterbrook, and Williams,
Circuit Judges.

   Easterbrook, Circuit Judge. St. Mary's
Hospital in East St. Louis hired Eileen
Shepard as a social worker, a position in
which she met Beatrice Neely, then 87
years old and one of the Hospital's
patients. Eileen gained the confidence of
Neely and her guardian Clara Person
(Neely's daughter), who invited Eileen
and her husband Everett to move into
Neely's home. The Shepards began to drain
Neely's bank account on the pretext of
using the money for home maintenance and
improvements. Neely's savings dwindled
from $92,000 to nothing by the time she
died. Everett has been convicted of mail
fraud and money laundering, and he has
been sentenced to 33 months' imprisonment
plus restitution of $165,000. His appeal
concerns only the amount of restitution.
(Eileen, indicted and convicted
separately, has not appealed.)

   Restitution usually means the return of
ill-got gains or other sums to which the
holder is not legally entitled, which
makes it hard to see how Everett could be
required to pay more than $92,000 plus
interest as restitution. The Mandatory
Victims Restitution Act, 18 U.S.C.
sec.3663A, follows the common law in this
respect. Section 3663A(b), which
specifies the amount of restitution,

provides in part:

The order of restitution shall require that such defendant--

(1) in the case of an offense resulting in damage to or loss or destruction of property of avictim of the offense--

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impracticable, or inadequate, pay an amount equal to--

(i) the greater of--

(I) the value of the property on the date of the damage, loss, or destruction; or

(II)  the value of the property on the date of sentencing, less

(ii)  the value (as of the date the property is returned) of any part of the property that is returned; . . . and

(4) in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

Eileen and Everett took Neely's money, and return of the same number of dollars would be "inadequate" for purposes of sec.3663A(b)(1)(A) because the money came from an interest-bearing account. Restitution should include interest to make up for the loss of the funds' capacity to grow.  See, e.g., Milwaukee v. Cement Division of National Gypsum Co., 515 U.S. 189, 195 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss"); In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279, 1311-35 (7th Cir. 1992) (interest should be computed at the rate the defendant would have had to pay for unsecured credit). This sends us to sec.3663A(b)(1)(B)(i)(II) which calls for restitution of value on the date of sentencing, a value that includes prejudgment interest. Neely's estate did

not incur any child care, transportation, or other expenses while assisting prosecution, so the presumptive restitution award remains $92,000 (plus interest, a detail that to simplify exposition we disregard from now on). We'll take up later the possibility that this amount should be reduced under sec.3663A(b)(1) (B)(ii).

Our calculation assumes that Neely (and thus her estate) is the victim of the offense. The prosecutor argues, and the district court apparently concluded, that the Hospital rather than Neely is the victim of this crime. Neely's estate sued the Hospital, contending that it was both directly and vicariously liable for the loss--vicariously because it was Eileen's employer, and directly because it failed to screen its employees properly. The Hospital took Eileen's credentials at face value, failing to learn that she was not qualified to be a social worker, was using a false Social Security number and other bogus details, and had a recent felony conviction; she was on probation when the Hospital hired her. Neely's estate sought both compensatory and punitive damages. The $165,000 represents the amount that the Hospital paid in settlement.

The district judge did not explain why he viewed the Hospital as the victim of Everett's crimes. Section 3663A(a)(2) defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense". The Hospital was not "directly" harmed by mail fraud or money laundering. The Shepards did not steal the Hospital's money; its loss was derivative of Neely's. Although Eileendefrauded the Hospital when obtaining employment, and the $165,000 might be deemed a loss from that fraud, it is not a crime in which Everett participated. (At least, this indictment did not charge him with that offense.) Apparently the prosecutor believes that any losses causally related to a crime make the person bearing those losses a "victim" of that crime. Yet sec.3663A(a)(2) says otherwise. Far from being "directly and proximately harmed as a result of the commission of an offense", the Hospital was liable for a harm inflicted by its employee (and by the Hospital's own negligence) on one of its patients. Although, by settling the

litigation, the Hospital became subrogated to Neely's rights against the Shepards, it obtained no entitlements other than those Neely had to convey, and that entitlement is limited to what Neely lost.

Both sec.3663A and its predecessor sec.3663 have been understood to require restitution only for direct losses and not for consequential damages and the other effects that may ripple through the economy. See, e.g., United States v. Arvanitis, 902 F.2d 489, 497 (7th Cir. 1990) (restitution is limited to the property subject to the offense and therefore excludes consequential losses such as attorneys' fees). (Arvanitis interprets sec.3663(b) rather than sec.3663A, but in this respect the two statutes are identical). If by failing to check Eileen's credentials the Hospital magnified the harm that the Shepards were able to inflict on others, in that respect the Hospital was a tortfeasor, not a victim. And to the extent the Hospital was vicariously liable for the Shepards' fraud, it was not a victim under sec.3663A(a)(2)'s definition. To see this, consider the treatment of an insurer. Suppose Neely had purchased insurance against theft, with a double-indemnity clause, so that the insurer paid her estate $184,000. At oral argument the prosecutor conceded that the insurer would not be deemed a victim under the statute, and that restitution would be limited to $92,000. Why, then, should the Hospital be treated differently when it indemnifies Neely for her loss?

The indictment alleges that the Shepards induced Person to buy an insurance policy, which they then cashed. This would not be a good reason to add to the $92,000: because the policy was purchased from Neely's bank account, adding the surrender value of the policy to the original balance of the account would be double counting. The charges of which Everett was convicted add to less than the whole $92,000, but at oral argument his lawyer expressly disclaimed any reliance on the principle that restitution under sec.3663A is limited to losses on the counts of conviction. See United States v. Behrman, 235 F.3d 1049 (7th Cir. 2000); United States v. Martin, 195 F.3d 961, 968 (7th Cir. 1999). Thus

$92,000 must be the starting point. The indictment implies that the Shepards may have taken some of Neely's physical assets as well as her financial assets. If so, then these losses must be added to the $92,000; the district judge should evaluate this possibility on remand.

What remains is application of sec.3663A(b)(1)(B)(ii), which requires a deduction from the award of "the value (as of the date the property is returned) of any part of the property that is returned". Everett contends that he and his wife "returned" about $12,000 of the $92,000 by using it to make improvements in Neely's home. Some of this $12,000 doubtless represented the consumption value that the Shepards, who were living in Neely's home, enjoyed from these expenditures, but to the extent improvements increased the market value of Neely's house, and thus were (or could have been) realized by Neely's estate in selling the property, the funds were "returned" for statutory purposes. It is no different in principle from taking the money from one of Neely's bank accounts and depositing it in another a week later. So long as Neely regained beneficial use of the property, it has been "returned" as sec.3663A(b)(1)(B)(ii) uses that term. The United States does not contend that the change of the property's form--from cash to, say, central air conditioning-- precludes a conclusion that the property has been "returned." Instead the prosecutor's only response is that the Shepards did not return any property to the Hospital; that position depends on treating the Hospital as the victim, which we have already held is not sound. On remand, then, the district judge must determine the amount by which improvements enhanced the market value of the house and deduct this sum from the sum otherwise appropriate as restitution.

The sentence of imprisonment, which has not been challenged, is left undisturbed. The award of restitution is vacated, and the case is remanded for proceedings consistent with this opinion.