12-5106 (L)
United States v. Maynard and Ludwig

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: November 21, 2013     Decided: February 24, 2014)

Docket Nos. 12-5106 (Lead), 12-5124 (Con)

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

          Appellee,

          - v.-

JOHN W. MAYNARD and JILL M. LUDWIG,

          Defendants-Appellants.

- - - - - - - - - - - - - - - - - - - -x

     Before:        KEARSE, JACOBS, and PARKER, Circuit Judges.

John Maynard and Jill Ludwig appeal from judgments of the United States District Court for the District of Vermont (Reiss, C.J.) requiring them to pay restitution after a series of bank robberies.  Maynard and Ludwig contest paying a bank's expenses other than the money taken in the robbery. We vacate the restitution component of the judgments and remand to redetermine restitution.

STEVEN L. BARTH, on behalf of
Michael L. Desautels, Federal
Public Defender for the District
of Vermont, Burlington, Vermont,
for Appellant John W. Maynard.

NANCY J. WAPLES, Hoff Curtis,
Burlington, Vermont, for
Appellant Jill M. Ludwig.

WILLIAM B. DARROW (Paul J. Van
de Graaf, on the brief), on
behalf of Tristram J. Coffin,
United States Attorney for the
District of Vermont, Burlington,
Vermont, for Appellee.

DENNIS JACOBS, Circuit Judge:

John Maynard and Jill Ludwig appeal the restitution component of judgments entered following their guilty pleas on a series of bank robberies. Pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), Pub. L. No. 104-132, 110 Stat. 1214 (codified at 18 U.S.C. §§ 3663-64), the United States District Court for the District of Vermont (Reiss, C.J.) imposed restitution in an amount consisting of the money taken in the robberies and additional expenses incurred by one of the victim banks. Maynard and Ludwig object only to restitution for these additional expenses as falling outside the provisions of the MVRA. For the following reasons, we vacate the restitution component of the judgments and remand to the district court.

2

**BACKGROUND**

Maynard and Ludwig robbed five banks between September and November 2011.[1]  Each time, one of the two entered the bank alone, passed a note to the teller claiming possession of a gun, and demanded money.  Each robbery lasted only a few minutes.  Nobody was harmed.

The couple was arrested hours after the last robbery on November 2, 2011.  They were indicted on three bank-robbery counts and one count of conspiracy.  Ludwig pled guilty on August 16, 2012 to one charge of bank robbery in violation of 18 U.S.C. § 2113(a).  The next month, Maynard pled guilty to conspiracy in violation of 18 U.S.C. § 371.  The two were sentenced in December 2012.

In the sentencing phase, the Government sought restitution under the MVRA, pursuant to 18 U.S.C. § 3663A.  More than half of the proposed restitution ($12,966) was to repay the money taken during the robberies, and is uncontested on appeal.  The rest included certain expenses paid by Merchants Bank, of which the following are the

---

[1] The date and place of the robberies are: 1) Merchants Bank, Rutland, Vt. on Sept. 7, 2011; 2) Lake Sunapee Bank, West Rutland, Vt. on Oct. 7, 2011; 3) TD Bank, Granville, N.Y. on Oct. 25, 2011; 4) TD Bank, Granville, N.Y. on Oct. 29, 2011; and 5) Citizens Bank, Poultney, Vt. on Nov. 2, 2011.

subject of this appeal: 1) paid time-off for the bank's regular staff, and the pay of replacement staff ($7,991.68); 2) mileage expenses for the replacement staff ($213.34); 3) the cost of wanted posters ($106.66); and 4) the cost of a temporary security guard at the bank after the robbery ($574.52).

At separate sentencing hearings, the Merchants Bank teller testified about the anxiety and emotional harm she suffered as a result of being held up. At Maynard's hearing only, the bank's security officer, Robert O'Neill, testified that the regular staff was sent home the day of the robbery because the bank was a crime scene, and that the bank did not reopen until it was released by law enforcement at the end of the day. On the two days following, the bank operated with temporary replacements while the regular staff was given paid leave to handle any trauma associated with the robbery. He explained that this was the bank's usual practice, and that taking care of employees in that way served a business purpose.

Maynard and Ludwig contested the inclusion of the bank's expenses in the restitution order. The court found, however, that the expenses claimed could be compensated

because they were directly and proximately caused by the robbery. The couple was sentenced, *inter alia*, to pay restitution in the amount of $21,852.20 jointly and severally. This amount included the expenses incurred by Merchants Bank listed above.

**DISCUSSION**

While the MVRA serves the broad policy purpose of assisting the victims of crime, it also enumerates the specific losses compensable in a mandatory restitution order. Maynard and Ludwig argue that Merchants Bank's expenses are not subject to restitution because they are not among these enumerated harms.

**I**

Prior to 1982, federal courts were not permitted to order restitution outside the probation context. See United States v. Amato, 540 F.3d 153, 159 (2d Cir. 2008). The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291, 96 Stat. 1248 (currently codified, as amended by the MVRA, at 18 U.S.C. § 3663), afforded courts discretion to impose restitution for specified kinds of harm. See Amato, 540 F.3d at 159.

The victims' rights movement later inspired a review of the judiciary's use of restitution.  In 1996, Congress passed the MVRA to help victims and to hold offenders accountable for the losses they inflict.[2]  See S. Rep. No. 104-179, at 17-18 (1995).

The MVRA made restitution mandatory for a broad swath of offenses.[3]  See 18 U.S.C. §§ 3663A(a)(1), (c).  The purpose of the MVRA "is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being."  United States v. Boccagna, 450 F.3d 107, 115 (2d Cir. 2006) (quoting United States v. Simmonds, 235 F.3d 826, 831 (3d Cir. 2000)) (internal quotation marks omitted).

When the MVRA controls, a court "shall require" the defendant to pay restitution for the harms listed in the statute.  18 U.S.C. § 3663A(b).[4]  No other expense

---

[2] While the MVRA started out as a separate bill, it was later placed within the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.

[3] The parties agree that the MVRA applies here because a bank robbery is a "crime of violence" under 18 U.S.C. § 3663A(c).

[4] The full text of 18 U.S.C. § 3663A(b) states:

The order of restitution shall require that such defendant––

6

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense--

   (A) return the property to the owner of the property or someone designated by the owner; or

   (B) if return of the property under subparagraph (A) is impossible, impracticable, or inadequate, pay an amount equal to--

      (i) the greater of--

         (I) the value of the property on the date of the damage, loss, or destruction; or

         (II) the value of the property on the date of sentencing, less

      (ii) the value (as of the date the property is returned) of any part of the property that is returned;

(2) in the case of an offense resulting in bodily injury to a victim--

   (A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   (B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   (C) reimburse the victim for income lost by such victim as a result of such offense;

(3) in the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

reimbursement is made mandatory.  There is no provision in §

3663A giving the district court discretion to order any

other restitution.

The broad scope of the MVRA is subject to some

limitations.  Only a 'victim' (or the victim's estate) is

entitled to restitution.  See 18 U.S.C. § 3663A(a)(1).  The

term 'victim' is defined as "a person directly and

proximately harmed as a result of the commission of an

offense for which restitution may be ordered."  18 U.S.C. §

3663A(a)(2).  This causation principle also governs the

calculation of reimbursable loss.  See United States v.

Gushlak, 728 F.3d 184, 194-95 (2d Cir. 2013).  And only a

victim's "actual loss" is compensable, not losses that are

hypothetical or speculative.  Id. at 195.

"The procedures by which the sentencing court imposes a

restitution order are set forth in 18 U.S.C. § 3664."

United States v. Marino, 654 F.3d 310, 317 (2d Cir. 2011);

see also 18 U.S.C. § 3663A(d).  Among other things, this

section prevents restitution from being conditioned or

---

(4) in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

limited by a defendant's ability to pay: "In each order of restitution, the court shall order restitution to each victim in the *full amount* of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A) (emphasis added).

## II

The decisive issue on this appeal is whether expenses other than those enumerated in § 3663A(b) are compensable under the MVRA.  We conclude they are not.

"We begin our interpretation of a federal statute with the statutory text."  City of New York v. Permanent Mission of India to the United Nations, 618 F.3d 172, 182 (2d Cir. 2010).  It is apparent from the text of § 3663A that unlisted harms are not compensable in restitution.  Because courts have no inherent authority to order restitution, Congress must provide the authority.  See United States v. Casamento, 887 F.2d 1141, 1177 (2d Cir. 1989).  Congress did so through the MVRA, but chose to include only the four categories of harms listed in § 3663A(b).  If Congress intended to include all harms directly and proximately

9

caused by a defendant's offense, it could have done so with wording more simple and categorical. "Applying the rule of statutory construction '*inclusio unius est exclusio alterius*'--that to express or include one thing implies the exclusion of the other"--it follows that Congress intended to limit the restitutable harms covered by the MVRA. United States v. Tappin, 205 F.3d 536, 540 (2d Cir. 2000).

The Government's reliance on the statutory mandate to impose restitution "in the full amount of each victim's losses," 18 U.S.C. § 3664(f)(1)(A), is misplaced. The MVRA provides that § 3664 is procedural rather than substantive. See 18 U.S.C. § 3663A(d); see also United States v. Cliatt, 338 F.3d 1089, 1093 (9th Cir. 2003) (stating § 3664 cannot trump substantive restitution provisions because it is only a procedural mechanism). Furthermore, the context of this clause is that the "full amount" of loss be determined "without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The provision emphasizes only that courts may not decrease restitution to account for the defendant's ability to pay. Taken thus in context, this clause cannot serve as the Government's springboard for restitution more broad than the text specifies.

The Government seems to suggest that any and all losses are compensable to the extent that they were 'directly and proximately' caused by a defendant's offense.  However, the requirements of direct and proximate causation, see, e.g., Marino, 654 F.3d at 317, are necessary conditions for restitution under the MVRA--not sufficient ones.  As the statute makes clear, the harm must also come within one of the categories enumerated in § 3663A(b).

The Government's cases do not support a broader application of the MVRA.  Many are mere applications of § 3663A(b)(1), which allows reimbursement for property loss. See, e.g., United States v. Qurashi, 634 F.3d 699, 702-05 (2d Cir. 2011) (allowing prejudgment interest for funds paid out of life insurance funds to ensure the victim received the "full amount" of their losses); United States v. Donaby, 349 F.3d 1046, 1051-55 (7th Cir. 2003) (damage to police car in chase after bank robbery).

**III**

We now consider whether the specific costs incurred by Merchants Bank fall within the enumerated harms of § 3663A(b).

11

**A**

In the wake of the robbery, the bank was closed as a crime scene for the afternoon, and the bank's regular staff stayed home the following two days to get over any stress caused by the incident. The district court ordered Maynard and Ludwig to pay restitution for the full amount of the wages paid to the regular staff over this period of time. However, given the goal of restoring victims "to their original state of well-being," Boccagna, 450 F.3d at 115 (internal quotation marks omitted), we need to take into account that the bank would have paid the regular staff in any event. Thus, the bank would enjoy a windfall if it recovered compensation for the full amount of the regular staff and replacement staff wages.

A portion of the regular staff wages is nevertheless compensable because the bank derived no benefit from the wages paid during the bank's closure on the day of the robbery. When a victim's facility is required to close temporarily for crime scene investigation, the associated costs may well fall under the MVRA. See, e.g., United States v. Wilfong, 551 F.3d 1182, 1183-87 (10th Cir. 2008) (lost work time due to evacuation after bomb threat); United

12

States v. Quillen, 335 F.3d 219, 222-23 (3d Cir. 2003) (closing mailroom due to contamination from anthrax); United States v. De La Fuente, 353 F.3d 766, 768, 771-73 (9th Cir. 2003) (lost work hours for postal service employees during decontamination resulting from receipt of a threatening letter said to contain anthrax).  To the extent the bank paid its regular staff for the remainder of that day, restitution is proper.

**B**

The wages for the temporary staff do not fall within the enumerated harms of § 3663A(b).  The temporary staff wages did not compensate for losses such as destruction of property or funeral expenses, and were not necessary to the prosecution or investigation of the offense.  See 18 U.S.C. § 3663A(b)(1), (3)-(4).  The expense is arguably attributable to the psychological recovery of the regular staff present during the robbery; however, the MVRA unambiguously limits recovery for psychological harm to instances of "bodily injury."  18 U.S.C. § 3663A(b)(2); see also United States v. Reichow, 416 F.3d 802, 805-06 (8th Cir. 2005).  The Government characterizes the wages as a

13

business expense absorbed by the bank, but the MVRA does not include a business expense category.  Because the temporary staff wages fall outside the enumerated harms of § 3663A(b), they may not be included in a restitution order.[5]

The Government adduces cases in which loss of income has been compensated after a robbery.  The summary order issued in United States v. Blagojevic, 331 F. Appx. 791, 794 (2d Cir. 2009), allowed restitution for lost income when the owner of a jewelry store closed the store during peak season due to trauma suffered from a robbery.  But Blagojevic was decided on the plain error standard of review; the only appellate issue was proximate causation, id. at 793-94; and the order did not consider the types of harms compensable under § 3663A.  (On the whole, the case is a good example of why summary orders lack precedential force.)  The Government also cites United States v. Tran, in which a teller who was unable to work after a bank robbery was awarded restitution for lost income.  234 F.3d 798, 804 (2d Cir. 2000), overruled on other grounds by United States v. Thomas, 274 F.3d 655 (2d Cir. 2001) (in banc).  However, the defendant

---

[5] Because we hold that the award for temporary staff wages was improper, it follows that the mileage expense for the temporary staff is likewise not allowable.

challenged only the payment plan and not "the imposition of restitution."  Id. at 812-13.

C

The only category of allowable expense in which the wanted posters and the temporary security guard might be located is § 3663A(b)(4), which requires defendants to "reimburse the victim for . . . *necessary* . . . expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."  18 U.S.C. § 3663A(b)(4) (emphasis added).

We have not adopted a test for necessity in this context.  Our reading of a statutory text "'necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there.'"  Dobrova v. Holder, 607 F.3d 297, 301 (2d Cir. 2010) (quoting Bustamante v. Napolitano, 582 F.3d 403, 406 (2d Cir. 2009)) (internal quotation mark omitted).  "In conducting such an analysis, we 'review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory

scheme.'" Id. (quoting United States v. Aguilar, 585 F.3d 652, 657 (2d Cir. 2009)). The dictionary definition of "necessary" tends to be circular: essential or indispensable. See 10 The Oxford English Dictionary 275-76 (2d ed. 1989) (defining "necessary" as "indispensable, requisite, essential, needful; that cannot be done without"). But the plain meaning is not obscure. The victim expenses that are recoverable as restitution under 18 U.S.C. § 3663A(b)(4) are expenses the victim was required to incur to advance the investigation or prosecution of the offense.

Generally, this Circuit takes a broad view of what expenses are "necessary." See United States v. Papagno, 639 F.3d 1093, 1101 (D.C. Cir. 2011) (citing Amato, 540 F.3d 153) ("In reaching our conclusion, we recognize that several other courts of appeals have taken a broader view of the restitution provision at issue here."). But respect for the limits of the statute is not a narrowing of it.

Two of our cases reflect the standard of necessity. Amato imposed restitution for attorney's fees and accounting costs incurred by an internal investigation that uncovered fraud--notwithstanding that not all of the effort and

16

expense was requested by the government.  See 540 F.3d at 159-60, 162 (noting that the victim had "assisted in gathering and producing evidence necessary to the government's prosecution").  Likewise, in United States v. Bahel, we affirmed restitution for legal fees incurred when the United Nations hired outside counsel to conduct an internal investigation rather than use on-staff lawyers.  See 662 F.3d 610, 647-48 (2d Cir. 2011).

In both cases, the internal investigations paid for by the victims unmasked fraud and led to investigations conducted by the authorities.  The expense of the internal investigations was necessary because the entity had interests to protect (the integrity of its ongoing operations and reputation, at the least) as well as a duty to protect those interests when faced with evidence, indicia, or a grounded suspicion of internal misconduct, and the investigation was a means calculated to achieve the protection of those interests.

A bank's production of wanted posters after a robbery has occurred is by comparison, and in absolute terms, gratuitous.  The crime had been committed; there was no especial likelihood that this bank would again be the victim

17

of the same robbers; the police had an ongoing investigation and did not seek the bank's cooperation in postering the neighborhood; and the bank had no interest to protect by an independent investigatory effort--and certainly had no duty to undertake it.

For many of the same reasons, the security guard served no investigatory purpose. The guard provided additional security for the bank after the robbery happened. If additional security had been laid on permanently, it would be necessitated by permanent security interests rather than by the conduct of these defendants. As it happens, the guard was hired on a short-term basis; but there is no plausible showing that a second robbery of this branch by these defendants was such an imminent peril or a risk that the bank had a duty to take measures by posting a temporary guard.

Because these expenses were not necessary to the investigation or prosecution of the offense, and do not fall within one of the other categories of harm enumerated in § 3663A(b), restitution for these expenses was improper.

**CONCLUSION**

The restitution order properly included the amount of money stolen during the bank robberies.  For the foregoing reasons, however, we conclude that the only portion of Merchants' expenses subject to restitution is the amount paid to the bank's regular staff while the bank was closed as a crime scene.  To that end, we vacate the restitution component of the judgments and remand to determine the amount of restitution consistent with this opinion.

19