14-2631-cr
United States v. Thompson

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————

August Term, 2014

(Argued: April 14, 2015    Decided: July 13, 2015)

Docket No. 14-2631-cr

———————

UNITED STATES OF AMERICA,

*Appellee*,

— v. —

JAMIE GENE THOMPSON, AKA Jamie P. Thompson, AKA Jamie G. Thompson,
AKA Payton Thompson,

*Defendant-Appellant.*[*]

———————

B e f o r e:

CABRANES, LYNCH, and DRONEY, *Circuit Judges.*

———————

[*] The Clerk is respectfully requested to amend the caption to conform to the caption above.

Defendant Jamie Gene Thompson appeals from a judgment of the United States District Court for the District of Vermont sentencing him, as relevant to this appeal, to pay restitution both to his victims and to third-party providers of compensation for losses arising from his fraudulent activities. Thompson argues that the district court erred by failing to reduce his liability to the third-party providers of compensation by the value of property that he returned to his victims, thus ordering him to pay more in restitution than he actually stole and failed to return. Because the Mandatory Victims Restitution Act caps a defendant's restitution liability at the amount of his victims' actual losses, net of any property the defendant returned to the victims, and because providers of compensation do not qualify as "victims" so as to expand the defendant's liability under the Act, the district court erred in ordering Thompson to pay more than the amount of his victims' net losses.

VACATED AND REMANDED.

———————

BARCLAY T. JOHNSON, Research & Writing Attorney (Steven L. Barth, Assistant Federal Public Defender, *on the brief*), *for* Michael L. Desautels, Federal Public Defender, District of Vermont, Burlington, Vermont, *for Defendant-Appellant* Jamie Gene Thompson.

GREGORY L. WAPLES, Assistant United States Attorney (Paul J. Van de Graaf, Assistant United States Attorney, *on the brief*), *for* Tristram J. Coffin, United States Attorney for the District of Vermont, Burlington, Vermont.

_____

GERARD E. LYNCH, *Circuit Judge*:

Defendant Jamie Gene Thompson appeals from a judgment of the district court sentencing him, as relevant to this appeal, to pay restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, for losses incurred through his fraudulent misuse of his victims' bank and credit accounts. Prior to his conviction, Thompson returned a portion of the stolen funds to his victims, and the victims' banks reimbursed another substantial portion of the stolen funds, ultimately leaving the victims with more than they had lost through Thompson's crimes. In calculating Thompson's restitution obligation, the district court found that the funds returned by Thompson belonged solely to the victims and could not offset Thompson's liability to the banks for the value of their reimbursements, effectively ordering Thompson to pay more in combined restitution to the banks and the victims than he stole, net of what he returned.

Because the MVRA limits a defendant's restitution amount to the actual losses suffered by his victims, and because third-party providers of compensation do not qualify as "victims" whose losses may expand the defendant's restitution liability, the district court erred in ordering Thompson to pay more in restitution than the victims' actual losses. Accordingly, we vacate the district court's restitution order and remand for recalculation.

## BACKGROUND

### I. The Fraud

Jamie Gene Thompson has an extensive criminal record that includes at least twelve convictions for fraud- and theft-related crimes. In 2008, Thompson began to work as a home-care attendant for Liddell and Albert Eardensohn, whom he had known for some time through his past services caring for Liddell's father. Although the Eardensohns knew of Thompson's criminal history, they welcomed him into their home, entrusting him with their financial records and eventually moving him into the house as a live-in caretaker.

In October 2012, after Thompson flew to California on what he claimed was a family visit, Liddell discovered numerous discrepancies in the Eardensohns' financial records. She retained an attorney to help investigate the

4

inconsistencies and recoup any missing funds. The investigation ultimately revealed that Thompson had misappropriated tens of thousands of dollars from the Eardensohns. That fraudulent activity included unauthorized withdrawals from the Eardensohns' investment account at Wells Fargo, unauthorized checks cashed against their checking account at TD Bank, and fraudulent charges on their Citibank credit card.

After the fraud was discovered, Thompson wrote the Eardensohns a series of letters confessing and apologizing for his crimes. In one letter, he promised to send $30,000 to cover his withdrawals from the Wells Fargo investment account, begging Liddell not to "press charges against [him]" because he was "doing everything to make this wrong a right to you." Thompson subsequently sent a check for $30,000, as well as a second check for $400 "towards the [credit card] charges [he] made." Both checks were deposited into a restitution account in the Eardensohns' names.

The Eardensohns' attorney subsequently convinced Wells Fargo to reimburse roughly three-fourths of Thompson's unauthorized withdrawals from the Eardensohns' investment account. Citibank also forgave the full amount of Thompson's unauthorized charges on the Eardensons' credit card.

5

II.     Procedural History

On October 13, 2013, Thompson pleaded guilty to a one-count indictment charging him with access device fraud in violation of 18 U.S.C. § 1029(a)(2).  As part of the plea agreement, he agreed to pay restitution to the Eardensohns for all losses resulting from his crime.

At the sentencing hearing, the parties calculated the total amount of Thompson's thefts at $65,143.47, comprising $46,308.47 stolen from the Eardensohns' Wells Fargo investment account, $1,815.50 cashed from their TD Bank checking account, $9,516.50 charged to their Citibank card, and $7,503 in compensable attorneys' fees.  Because Wells Fargo and Citibank had reimbursed the Eardensohns for some of those losses, and because in such circumstances a defendant should pay restitution directly to the reimbursers, see 18 U.S.C. § 3664(j)(1), Thompson owed portions of that sum (setting aside any credit for the amount repaid to the Eardensohns) to three different parties: $21,859 to the Eardensohns, reflecting the attorneys' fees, TD Bank checks, and unreimbursed Wells Fargo withdrawals; $9,516.50 to Citibank, reflecting the forgiven credit card charges; and $33,767.97 to Wells Fargo, reflecting the reimbursed withdrawals.

The parties also agreed that Thompson's repayments of $30,400 to the

6

Eardensohns should be offset against his restitution obligation. However, they disagreed about how to apply that $30,400. Thompson argued that it should be subtracted from his total restitution amount, leaving him with an outstanding obligation of $34,743.47, to be distributed as appropriate among the Eardensohns and the banks. To the extent that the $30,400 he had paid the Eardensohns and the amounts that the banks had repaid to them exceeded their losses, and left the banks under-compensated, Thompson proposed that the Eardensohns be instructed to remit to the banks any excess monies received from Thompson.

By contrast, the government urged that the $30,400, which had been sent directly to the Eardensohns, could be used only to satisfy Thompson's remaining obligation to the Eardensohns, not his debts to either of the banks. By that calculation, Thompson would need to make no further payments to the Eardensohns, whose losses of $21,859, had been fully satisfied by Thompson's check payments, but would still have to pay Wells Fargo and Citibank $43,284.47 in restitution.

The district court (J. Garvan Murtha, *Judge*) adopted the government's position. Judge Murtha did not dispute that crediting the full $30,400 against Thompson's $21,859 debt to the Eardensohns would effectively leave them with

7

$8,541 more than they had initially lost. Nevertheless, he concluded that this outcome would not constitute an unfair "windfall" because Thompson had sent the money to the Eardensohns "voluntarily," making those funds the Eardensohns' property to dispose of as they wished. J. App'x at 63. Judge Murtha also suggested that any additional benefit accruing to the Eardensohns was not inequitable under the circumstances, since they had "experienced not only monetary expenses but . . . also . . . had to suffer through the process of trying to undo everything that Mr. Thompson did to them." Id.

Judge Murtha thus ordered Thompson to pay a total of $65,143.47 in restitution, with $21,859 for the Eardensohns, $33,767.97 for Wells Fargo, and $9,516.50 for Citibank, with the further addendum that Thomson's debt of $21,859 to the Eardensohns was deemed satisfied in full by his earlier payments. That order left Thompson owing an additional $43,284.47 to Wells Fargo and Citibank, which, combined with his $30,400 in check payments to the Eardensohns, would result in Thompson having to pay $8,541 more than he originally stole.[1]

---

[1] Thompson was also sentenced to 30 months' imprisonment, to be followed by a three-year term of supervised release. He does not challenge those portions of the judgment.

Thompson appeals, arguing, *inter alia*, that the district court improperly treated the banks as "victims" pursuant to the governing restitution statute and thus erred by failing to offset the restitution due to the banks by the amount Thompson had repaid to the Eardensohns.

**DISCUSSION**

We generally review a district court's order of restitution "for abuse of discretion," reversing its ruling only if it "rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." United States v. Boccagna, 450 F.3d 107, 113 (2d Cir. 2006) (internal quotation marks omitted). When a defendant's challenge to a restitution order raises an issue of law, we review that challenge *de novo*. United States v. Reifler, 446 F.3d 65, 120 (2d Cir. 2006).

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, is one of several federal statutes empowering courts to impose restitution obligations on criminal defendants. Supplementing an earlier statute that allows courts to impose discretionary orders of restitution, see id. § 3663, the MVRA makes restitution mandatory for certain categories of crimes that inflict physical injury or property loss on their victims, see id. § 3663A(a). It imposes that

9

requirement through two statutory components: a substantive provision codified at 18 U.S.C. § 3663A, and a procedural provision codified at 18 U.S.C. § 3664 and incorporated into the MVRA at 18 U.S.C. § 3663A(d).

Section 3663A, the substantive component, provides that a district court "sentencing a defendant convicted of an offense described in subsection (c) . . . shall order . . . that the defendant make restitution to the victim of the offense." Id. § 3663A(a)(1). As that language suggests, "[o]nly a 'victim' (or the victim's estate) is entitled to restitution" under the MVRA. United States v. Maynard, 743 F.3d 374, 378 (2d Cir. 2014). A "victim" for the purposes of the statute is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). In restricting its definition of "victim" to persons proximately harmed by the defendant's acts, the MVRA aims to limit restitution to those harms that "ha[ve] a sufficiently close connection to the conduct at issue." Robers v. United States, 134 S. Ct. 1854, 1859 (2014) (internal quotation marks omitted). Accordingly, we have recognized that § 3663A(a)(2)'s definition of "victim" governs "the calculation of [the] reimbursable loss" itself. Maynard, 743 F.3d at 378; see also United States v. Gushlak, 728 F.3d 184, 194-95 (2d Cir. 2013).

10

In addition to defining the category of reimbursable victims, § 3663A provides a formula for calculating a defendant's restitution amount. See 18 U.S.C. § 3663A(b). The "primary and overarching goal of the MVRA is to make victims of crime whole": to "compensate these victims for their losses and to restore the[m] to their original state of well-being." United States v. Qurashi, 634 F.3d 699, 703 (2d Cir. 2011) (internal quotation marks omitted). To fulfill this objective without "award[ing] the victim a windfall, i.e., more in restitution than he actually lost," the MVRA caps the restitution award at the actual "amount of the victim's loss." Boccagna, 450 F.3d at 117 (internal quotation marks omitted); see also United States v. Coriaty, 300 F.3d 244, 252 (2d Cir. 2002) ("Unlike loss calculations, a court's power to order restitution is limited to actual loss.") (internal quotation marks omitted). In the case of offenses involving monetary loss, that amount equals "the greater of . . . the value of the property on the date of the damage, loss, or destruction; or . . . the value of the property on the date of sentencing, less . . . the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B).

As to procedure, the MVRA provides that any restitution orders imposed under the Act must "be issued and enforced in accordance with section 3664."

Id. § 3663A(d).[2] We have emphasized that § 3664 is "procedural rather than substantive," Maynard, 743 F.3d at 379, serving not to impose any independent restitution obligations on a defendant but simply to set the "procedures by which the sentencing court imposes [the] restitution order" calculated under § 3663A, id. at 378 (internal quotation marks omitted). In Maynard, we specifically rejected the argument that 18 U.S.C. § 3664(f)(1)(A), which requires a district court to "order restitution to each victim in the full amount of each victim's losses" without regard to a defendant's finances, trumped § 3663A's restrictions on the categories of "losses" that are compensable under the MVRA. Id. at 378-79. Agreeing with the Ninth Circuit's holding that "§ 3664 cannot trump [the] substantive restitution provisions because it is only a procedural mechanism," id. at 379, citing United States v. Cliatt, 338 F.3d 1089, 1093 (9th Cir. 2003), we ruled that the scope of a defendant's restitution obligation under the MVRA is limited by the provisions of § 3663A itself. See id. at 378 (holding that "expenses other

---

[2] Section 3664 also governs the administration of other restitution statutes, most notably the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663. See id. § 3663(d).

than those enumerated in § 3663A(b) are [not] compensable under the MVRA").[3]

Section 3664 thus merely sets out procedures to be followed, including in circumstances where, as here, a victim receives reimbursement for his or her losses from a third party prior to entry of a restitution order. First, § 3664(f)(1)(B) explains that such third-party compensation is irrelevant to a district court's calculation of the defendant's total restitution liability, providing that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B). Second, § 3664(j)(1) provides that, where a third party has assumed the victim's losses by reimbursing the victim, the court must order a defendant to pay restitution directly to that third party: "If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the

_____

[3] Notably, § 3664(f)(1)(A) itself does not provide any guidance for determining a defendant's restitution amount, but rather assumes that the court has already determined that amount independently. See 18 U.S.C. § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."). In the case of the MVRA, that determination is governed by § 3663A(b).

compensation . . . ." Id. § 3664(j)(1).  Any funds still owed to the original victim,
however, must be repaid in full before any payments may be diverted to a
third-party provider of compensation.  See id. ("[T]he restitution order shall
provide that all restitution of victims required by the order be paid to the victims
before any restitution is paid to such a provider of compensation.").

As both the language and structure of the MVRA suggest, the third-party
providers of compensation discussed in § 3664 are not equivalent to "victims"
under the Act.   Although the MVRA defines the category of "victims" eligible to
receive restitution in the substantive provisions of § 3663A, see 18 U.S.C.
§ 3663A(a)(2), it refers to third-party providers of compensation only in the
procedural provisions of § 3664, see id. §§ 3664(f)(1)(B), (j)(1).  Furthermore,
§ 3664 expressly distinguishes between "victims" and providers of compensation.
Far from equating a provider of compensation with a "victim" under
§ 3663A(a)(2), § 3664(j)(1) clarifies that "victims" occupy a privileged place in the
statutory scheme, demanding that all victims be satisfied in full before any
payments are made to providers of compensation.  See id. § 3664(j)(1).
Respecting that difference, both this court and our sister Circuits have
consistently distinguished between the victims of a crime under the MVRA and

14

providers of compensation.  See, e.g., United States v. Cuti, 778 F.3d 83, 92 (2d

Cir. 2015) (holding that § 3664(j)(1) permits restitution directly to a "third party"

where that "third party has . . . paid an expense incurred by the victim"); Cliatt,

338 F.3d at 1092 ("Under § 3664, the court must order restitution to be paid

directly to an insurer . . . if there is a 'victim' within the meaning of the MVRA

and if the third party compensated the victim for some or all of the victim's

loss."); United States v. Shepard, 269 F.3d 884, 886 (7th Cir. 2001) (holding that a

third party that settled victim's losses was not "the victim of this crime").

Because third-party providers of compensation are not themselves

"victims" for the purposes of the MVRA, any losses suffered by those parties in

the course of compensating a victim cannot increase a district court's calculation

of the defendant's restitution obligations under § 3663A(b).  Indeed, § 3664

expressly provides that a third party's compensatory payments should *not* affect

the determination of the restitution amount.  See 18 U.S.C. § 3664(f)(1)(B).

Rather, where a third party has already reimbursed the victim's losses,

§ 3664(j)(1) simply shifts *payment* of the restitution amount calculated under

§ 3663A(b) directly to that party.  See United States v. Frazier, 651 F.3d 899, 906

(8th Cir. 2011) ("[T]he compensation provided by a third party merely shifts the

payment of a portion of the restitution to that third party for reimbursement . . . .").

Accordingly, we have recognized that any restitution paid by a defendant to a third party insurer cannot exceed the amount the defendant could lawfully be ordered to pay the original victim. In United States v. Golomb, a district court ordered a defendant convicted of transporting stolen checks to pay his victim $80,909 in restitution, but failed to consider that the victim's bank was likely already in the process of compensating its loss. See 811 F.2d 787, 791-92 (2d Cir. 1987). In light of the victim's imminent reimbursement from a third-party source, we held that the district court's "restitution order should be modified to provide that if the [victim] has been compensated in full or in party by [the] Bank, then Golomb shall pay [the] Bank the amount [the bank] paid the [victim] (*not to exceed $80,909*)."[4] Id. at 792 (emphasis added); see also Frazier, 651 F.3d at 906 ("[T]o

_____

[4] Golomb was decided before the passage of the MVRA and involved a restitution award under the VWPA. However, because the "provisions of the VWPA and the MVRA are nearly identical in authorizing an award of restitution," we have recognized that past case law interpreting one statute applies to parallel provisions of the other. Cuti, 778 F.3d at 94 (internal quotation marks omitted); see also Gushlak, 728 F.3d at 194 n.6 ("In setting forth the legal standards governing awards under the MVRA, we rely also on cases applying materially identical provisions of another federal restitution statute, the Victim and Witness Protection Act, 18 U.S.C. § 3663.").

16

the extent [the third parties] are found to have provided compensation for the [victim's] losses . . . , this amount does not increase the total amount of the restitution order."); Shepard, 269 F.3d at 887 ("Although . . . the [provider of compensation under § 3664(j)(1)] became subrogated to [the victim's] rights against the [defendant], it obtained no entitlements other than those [the victim] had to convey, and that entitlement is limited to what [the victim] lost.").

In this case, Thompson defrauded the Eardensohns of $65,143.47. He subsequently returned $30,400 of their lost property. Under the plain text of § 3663A(b), his total restitution liability under the MVRA is thus the value of the stolen property ($65,143.47) minus the value of what he returned to the victims ($30,400), equaling $34,743.47. The fact that Wells Fargo and Citibank, as third-party providers of compensation, have already paid the Eardensohns a cumulative $43,284.47 – $8,541 more than what Thompson himself can be asked to pay – does not affect Thompson's legal liability under the MVRA. The sole effect of that compensation is to divert payment of Thompson's remaining obligation, since the Eardensohns have been fully compensated by the banks and Thompson's repayments, from the Eardensohns to the banks themselves.

The government protests that deducting Thompson's $30,400 repayment from his remaining obligations to Wells Fargo and Citibank will have the anomalous effect of forcing the Eardensohns to use their own funds to repay the banks – a scenario that both deprives the Eardensohns financially and violates § 3664's provision that "[n]o victim shall be required to participate in any phase of a restitution order." 18 U.S.C. § 3664(g)(1). In fact, it will do no such thing. As neither the Eardensohns nor the banks are parties to the criminal proceeding, the government is correct that the district court lacks power to compel the Eardensohns to pay any money to the banks. Whether the Eardensohns have been unjustly enriched by receiving both repayments from Thompson and compensation from the banks is a question of state law, to be resolved, if the banks choose to pursue the matter, by the state courts.

To the extent that crediting the full value of Thompson's $30,400 payments to the Eardensohns against his restitution amount might at some point result in the Eardensohns' having to repay Citibank or Wells Fargo some portion of their prior reimbursements, that possibility does not unfairly force the Eardensohns to compensate the banks from their "own" property. It simply corrects for the banks' initial overpayment of the Eardensohns in light of new information about

18

the status of their missing funds. Nor does that possibility violate § 3664(g)(1)'s admonition that a victim may not be forced to "participate" in a restitution order. Where a victim who has previously been compensated by a third party for lost property subsequently regains some portion of that property, any duty she might have to return the insurer's money arises not as a "phase" of a restitution proceeding, but purely through the victim's own contractual or other relationship with the insurer. See, e.g., United States v. Andrews, 600 F.3d 1167, 1173-74 (9th Cir. 2010) (Clifton, J., concurring) ("[U]nder [state] law, [a third-party provider of compensation] is entitled to receive the money it already paid the victim . . . if and when he is reimbursed by defendant . . . ."). Any dispute between the Eardensohns and Wells Fargo and Citibank about the extra $8,541 gained by the Eardensohns and lost by the banks is a matter to be settled between those parties or resolved under state law, and does not affect Thompson's restitution obligations under the MVRA.

In short, because a defendant's restitution liability under the MVRA is capped at the actual loss incurred by his victims, and because third-party providers of compensation do not qualify as "victims" whose losses can expand that restitution amount, the district court erred in its restitution calculation by

19

failing to subtract the entirety of Thompson's previous payments to the Eardensohns from the amount due to his victims. On remand, Thompson's restitution amount should be limited to the $34,743.47 that remained of the Eardensohns' original losses after he returned $30,400 of the stolen funds, to be divided pro rata between Wells Fargo and Citibank in proportion to their compensation payments.

## CONCLUSION

For the foregoing reasons, the district court's judgment is VACATED and the case is REMANDED to the district court for further proceedings.