14-820-cr
*United States v. Stevens, Kinpit Assocs., L.P.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of June, two thousand eighteen.

PRESENT:    RALPH K. WINTER,
            DENNY CHIN,
            CHRISTOPHER F. DRONEY,
                 *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                 *Appellee*,

            v.                                          14-820-cr

TROY D. STEVENS, JR.,
                 *Defendant-Appellant*,

KINPIT ASSOCIATES, L.P.,
                 *Intervenor.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:                       Martin E. Coffey, David C. James, Peter A.
                                    Norling, Assistant United States Attorneys, *for*
                                    Richard P. Donoghue, United States Attorney
                                    for the Eastern District of New York, Brooklyn,
                                    New York.

FOR DEFENDANT-APPELLANT:             Steven Y. Yurowitz, Newman & Greenberg,
                                    New York, New York.

FOR INTERVENOR:                     Richard H. Dolan (James C. Sherwood, *on the
                                    brief*), Schlam Stone & Dolan LLP, New York,
                                    New York.

Appeal from the United States District Court for the Eastern District of

New York (Irizarry, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-appellant Troy Stevens, Jr., a former general partner of Kinpit

Associates, L.P. ("Kinpit"), appeals from the district court's judgment ordering him to

pay $4,486,176.05 million in restitution to Kinpit under the Mandatory Victims

Restitution Act ("MVRA"), 18 U.S.C. § 3663A.  By summary order dated October 25,

2016, we remanded the case to the district court to answer seven questions about the

restitution award.  *United States v. Stevens*, 657 F. App'x 69 (2d Cir. 2016).  The district

court answered these questions and adhered to its initial ruling on restitution.  We

conclude that the district court did not abuse its discretion in determining that Kinpit

was entitled to restitution in the amount ordered.  Accordingly, we affirm.  We assume

2

the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Stevens was the general partner of Kinpit, a limited partnership formed to own and operate apartment buildings in New York City. Between July 7, 2000 and May 16, 2003, without the knowledge or approval of the limited partners, Stevens fraudulently obtained loans and mortgages for Kinpit using a forged partnership agreement and consent form. Stevens then consolidated the initial four loans into a single $4.6 million loan, issued by North Fork Bank and later acquired by Capital One Bank NA ("Capital One"), and pledged Kinpit's buildings as collateral.

In 2005, Kinpit's limited partners filed suit against Stevens for breach of contract, breach of fiduciary duties, misuse of partnership assets, and fraud. *See Garber v. Stevens*, No. 601917/05, 2005 WL 6460538 (N.Y. Sup. Ct. 2005). In October 2012, the parties settled the civil suit and Stevens conveyed his 50% interest in Kinpit to the limited partners, in exchange for a release of all claims (the "Settlement Agreement"). On August 22, 2013, Kinpit sold its buildings for $10.35 million. Shortly thereafter, Kinpit paid off the Capital One loan in full, using proceeds from the building sale.

Stevens was indicted on multiple counts on October 2, 2012. On May 28, 2013, he pleaded guilty to bank fraud in violation of 18 U.S.C. § 1344 (Count Two) and filing a false tax return in violation of 26 U.S.C. § 7206 (Count Six). On February 28, 2014, the district court sentenced Stevens to 63 months' imprisonment and three years'

3

supervised release, and ordered forfeiture of $150,000, a $200 special assessment, and $4,486,176.05 in restitution to Kinpit. The district court found Kinpit to be a third-party compensator of the victim, Capital One, who was entitled to restitution pursuant to 18 U.S.C. § 3664(j)(1). Judgment was entered on February 28, 2014.

Stevens appealed, arguing *inter alia* that the district court erred in ordering him to pay restitution to Kinpit. The government argued that restitution was properly paid to Kinpit as a third-party compensator and that Stevens should not be given a credit towards his restitution obligation for surrendering his partnership.

By summary order dated October 25, 2016, we affirmed the sentence, but remanded as to the district court's restitution order, as we were "unable, because of a lack of clarity in the record, to determine whether the district court properly applied" the principles applicable to restitution. *Stevens*, 657 F. App'x at 73. Accordingly, we set forth seven questions for supplementation of the record. The summary order provided that, following the district court's decision on remand, jurisdiction would automatically be restored to this panel.

On remand, the government changed its position with respect to restitution, arguing that Stevens should be given credit for surrendering his partnership interest. Kinpit's proceeds from the sale of its buildings were $10,350,000, and $4,500,592.71 of that amount was used to pay off the Capital One loan in full. The

4

government argued that this amount should offset Stevens's restitution obligation of $4,486,176.05, and that, accordingly, Stevens owes no restitution to Kinpit.

The district court rejected the argument and adhered to its prior restitution order. On August 21, 2017, the district court filed its memorandum and order responding to the seven questions posed by this Court and concluded that restitution remained appropriate.[1] The parties returned to this Court and submitted supplemental briefing.

We review a district court's order of restitution "for abuse of discretion," reversing its ruling only if it "rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States*

---

[1] The questions posed to the district court and the court's answers are summarized below:

1. Was the district court treating Kinpit as a victim of Stevens's bank fraud for the purposes of the MVRA, or as a third-party compensator? Third-party compensator.
2. What were Capital One's "actual losses"? $4,500,592.71.
3. Did the restitution award include compensation for Kinpit's losses (as opposed to Capital One's losses)? The award only included compensation for Capital One's losses.
4. Did the restitution award exceed the amount of Capital One's actual losses resulting from Stevens's bank fraud? No.
5. Were any of the loan proceeds diverted by Stevens, and, if so, how much went to Kinpit? The parties agreed that at least some of the loan proceeds were diverted by Stevens, but the parties disagreed on how much went to Kinpit. The district court found that none of the transfers of the loan proceeds made by Stevens from the Kinpit operating account were diverted to Kinpit.
6. Is Kinpit receiving a windfall (*i.e.*, is Stevens being ordered to pay monies to Kinpit that he has already paid)? No.
7. Was the settlement agreement between Stevens and Kinpit intended to compensate Kinpit for its losses resulting from Stevens's bank fraud, and if so, to what extent? No.

5

*v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006) (citations omitted). "When a defendant's challenge to a restitution order raises an issue of law, we review that challenge *de novo*." *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015).

The MVRA makes restitution mandatory for certain categories of crimes, including those that inflict property loss on their victims. 18 U.S.C. § 3663A(a). Only a victim is entitled to restitution under the MVRA. *See United States v. Maynard*, 743 F.3d 374, 378 (2d Cir. 2014). A "victim" for the purposes of the statute is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663A(a)(2). The MVRA thus aims to limit restitution to those harms that "ha[ve] a sufficiently close connection to the conduct at issue." *Robers v. United States*, 134 S. Ct. 1854, 1859 (2014) (citation and internal quotation marks omitted).

The primary goal of the MVRA is to "compensate these victims for their losses and to restore the[m] to their original state of well-being." *Thompson*, 792 F.3d at 277 (quoting *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011)). To avoid awarding the victim a windfall, "the MVRA caps the restitution award at the actual 'amount of the victim's loss.'" *Id*. (quoting *Boccagna*, 450 F.3d at 117). In cases involving monetary loss, the actual loss calculation must take into account "the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B)(ii).

6

Where, as here, a victim receives reimbursement for his or her losses from a third party prior to the entry of a restitution order, the third-party compensation is irrelevant in calculating the defendant's total restitution. *See* 18 U.S.C. § 3664(f)(1)(B) ("In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.").

Additionally, where, as here, a third party has assumed the victim's losses by reimbursing the victim, the court must order a defendant to pay restitution directly to that third party. *See* 18 U.S.C. § 3664(j)(1) ("If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation."). Any funds still owed to the victim, however, must be repaid in full before any payments may be diverted to a third-party compensator. *Thompson*, 792 F.3d at 278. Moreover, because third-party compensators are not themselves "victims" for the purposes of the MVRA, "any losses suffered by those parties in the course of compensating a victim cannot increase a district court's calculation of the defendant's restitution obligations under § 3663A(b)." *Id*. at 279. "[W]here a third party has already reimbursed the victim's losses, § 3664(j)(1) simply shifts *payment* of the restitution amount calculated under § 3663A(b) directly to that party." *Id*. (emphasis in original).

7

Here, Stevens and the government argue that Stevens's restitution obligation should be offset by the 50% ownership interest Stevens gave up pursuant to the Settlement Agreement. The district court determined, however, that Stevens's relinquishment of his interest was not intended to compensate his limited partners for the Capital One loan. Rather, the district court concluded that Stevens's relinquishment of his ownership interest was to account for other liabilities to his limited partners, and it awarded restitution to compensate Kinpit for its repayment of the Capital One loan.

The district court's view is supported by the record: the Settlement Agreement did not provide that Stevens's relinquishment of his interest was to account for paying off the Capital One loan, the Settlement Agreement was silent as to who was responsible for paying off the Capital One loan, and the Settlement Agreement provided that Stevens would indemnify Kinpit against any liabilities incurred or to be incurred by Kinpit by reason of any claim or suit. In addition, the settlement preceded the repayment of the Capital One loan, Kinpit suffered additional losses (although not attributable to Count 2, the count of conviction), and the restitution award did not compensate Kinpit for its own losses. Thus, the district court did not err in finding that Stevens's relinquishment of his 50% interest was not intended to compensate Kinpit for repaying the Capital One loan.

The government rests its argument on general principle of equity, claiming that even if it was not Stevens's intent that the proceeds from the sale of

Kinpit's buildings pay off the Capital One loan, "Kinpit benefitted from Stevens's actions, which facilitated and allowed for the . . . selling [of] its building, thereby providing funds to Kinpit with which it could pay off the loans." Appellee Br. at 15.

This argument misses the mark. The district court found that "all transfers of the loan proceeds made by [Stevens] from the partnership operating account were for his personal benefit and that none of the loan proceeds were diverted to Kinpit." Dist. Dkt. No. 63 at 7 (Memorandum and Order). As the government has acknowledged, Stevens directed nearly $4.6 million to himself through Dawmich, his wholly-owned subsidiary. In addition, the record shows that Kinpit suffered more than $11 million in losses and that, as the district court found, Kinpit is not receiving a windfall. Although these losses are not entirely attributable to the crime of conviction, the district court did not abuse its discretion when it determined that Stevens's relinquishment of his partnership interest was not meant to compensate Kinpit for repayment of the Capital One loan, but to account for other obligations, and that Kinpit was entitled, as a third-party compensator, to restitution in the amount ordered.

We have considered Stevens's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9